## BRADLEY *vs.* BOSLEY.

Where A. sold to B. a farm, and agreed to receive, in part payment thereof, a lot owned by B. in Illinois, with the value of which A. was unacquainted; and B. thereupon made false representations as to the character, situation and value of the Illinois lot, to induce A. to take the same in part payment for the farm sold; which A. accordingly did, allowing B. for the Illinois lot a sum greatly beyond its value; *Held*, that A. had an equitable lien upon the farm sold by him; for the amount of the difference in value between the Illinois lot, as it really was, and the value, as it would have been, had B.'s representations been true; with interest, on such difference.

If a vendor of land, knowing that the purchaser is unacquainted with its situation or value, makes a false representation as to any matter which, if true, would materially enhance the value of the property, he is, in equity, bound to make his representation good.

Where a party has been defrauded by another, in the purchase or sale of property, he may rescind the contract, so as to restore the parties to the same situation they were in when the contract was made; or he may affirm the contract, so far as it has been executed, and claim a compensation for the fraud.

But it must be a very special case which will authorize the injured party to come into a court of equity to have a contract partially rescinded; and it must be one in which the court can see that no possible injustice will be done by such a course.

In cases of fraud a court of equity has jurisdiction, although the party seeking its aid might have obtained relief in an action at law.

A bill in equity for the purpose of obtaining a compensation in damages merely, to be paid by the defendant personally, cannot be sustained; where the defendant makes the objection at the proper time, by demurrer or answer, that the complainant has a full and perfect remedy by an action at law against the defendant.

It is a settled principle of equity, in all cases of fraud, that if the party who has been defrauded is entitled to come into this court for any relief, arising out of the contract as to which he has been defrauded, and where it is necessary for him to allege and establish the fraud in order to obtain such relief, he may obtain full relief here, without resorting to a suit at law; although as to a part of the relief claimed, he had a perfect remedy in an action at law for damages.

The vendor of real estate has an equitable lien upon the estate sold, for the unpaid purchase money, as between him and the vendee, in all cases; unless there is either an express or an implied agreement to waive such lien.

Where, by the fraud of the vendee, a part of the price of the estate sold in fact remains unpaid, although the vendor supposed he had been paid in full at the time, there is no waiver of the equitable lien for the part of the price that actually remained unpaid.

A person having an equitable lien upon land, for the unpaid purchase money, may come into this court, in the first instance, to enforce such lien; without resorting to

---

Bradley *v.* Bosley.

---

a suit at law to recover the amount. And as an incident to the right to enforce such lien, this court will ascertain the amount thereof.

THIS was an appeal from a decree of the vice chancellor of the eighth circuit, dismissing the complainant's bill. The complainant, in November, 1839, was the owner of a farm in Le Roy, which farm was subject to three mortgages thereon, amounting together to the sum of $1350. And the defendant owned a lot of 220 acres of land in Illinois, which he had once visited, but which the complainant had never seen. A negotiation was entered into by the parties, for the sale of the Le Roy farm to the defendant, the complainant to receive the Illinois lot in part payment. This negotiation resulted in a written contract between them for a sale to the defendant of the Le Roy farm, together with certain farming utensils and other property, for the price or sum of $4000, to be paid for by a conveyance from him to the complainant of the Illinois lot, at the rate or price of five dollars an acre, and the assumption, by the defendant, of the payment of the three mortgages upon the Le Roy farm. And the rest of the $4000 was to be paid in cash at a future day, and to be secured to the complainant by a bond and mortgage upon the Le Roy farm. This agreement was carried into effect in April, 1840; at which time the complainant conveyed the Le Roy farm to the defendant, subject to the payment by the latter of the three mortgages which were liens thereon. And the defendant gave the complainant a deed of the Illinois lot, and paid him a part of the balance of the $4000 in cash, and gave him a bond and mortgage for the residue. That bond and mortgage the complainant subsequently sold and assigned to a third person. The defendant went into possession of the Le Roy farm, and afterwards paid off one of the mortgages upon the premises, which he had assumed to pay by his contract with the complainant. During the negotiation between the parties, the defendant made certain representations to the complainant, which, as the bill alleged, turned out to be false, in relation to the quality of the Illinois land, the situation and quantity of timber thereon, and the character of the soil, &c. In May, 1841, the complainant

went to Illinois for the purpose of settling upon the lot conveyed to him by the defendant. But finding the lands different from what he expected to find them, from the representations of the defendant, he returned in the latter part of June of that year; and tendered to the defendant a reconveyance of the Illinois lot, and demanded to be paid the $1100 at which the lot had been estimated in the contract for the sale of the Le Roy farm. This demand not being acceded to, the complainant filed his bill in this cause, in which he charged, among other things, that the Illinois land was worthless and wholly unfit for farming purposes, and destitute of timber; and that the representations made to him by the defendant, before and at the time of the sale of the Le Roy farm, as to the situation, quality, and value of the Illinois land, in the several particulars mentioned in the bill, were falsely and fraudulently made. And he prayed that the defendant might be decreed to pay him the $1100 with interest thereon from the date of the conveyances under the contract, together with the expenses and damages which he had sustained by his removal to Illinois to settle upon the lands, &c.; that the deed of the Illinois lot might be declared to be inoperative, upon a reconveyance of the lot by him to the defendant; and that the amount decreed to be paid by the defendant might be declared to be a lien upon the Le Roy farm; or that he might have such other relief as he was entitled to upon the case made by his bill. The defendant, in his answer, denied all fraud and false representations by him in relation to the situation, quality or value of the Illinois lands. The cause was heard upon pleadings and proofs. The vice chancellor decided that the complainant had no right to have the contract rescinded in part; and that the court would not entertain jurisdiction of the case for the mere purpose of decreeing a compensation in damages for a false and fraudulent representation in relation to the situation of the Illinois lot. He therefore declined examining the question whether the proofs in this case were sufficient to support the allegations in the bill on that subject.

The following opinion was delivered by the vice chancellor:

WHITTLESEY, V. C.   It struck me when the bill was
read at the hearing, that the case made by it was a proper one
for the jurisdiction of a court of law, and not such as should be
presented to a court of equity.   I had expected to find an objec-
tion of this character taken in the answer; and if such objection
had been interposed in the pleadings, I should have no hesita-
tion in deciding that the complainant's remedy was not in this
court.   That is, that this court was not the proper tribunal to
pass upon this kind of remedy which the complainant has
chosen to ask.   The complainant's counsel urges that the mis-
representations charged are alleged to have been fraudulently
made, and that this court has jurisdiction in matters of fraud.
There can be no doubt of the truth of this proposition, in a gen-
eral sense.   In cases where a party is entitled to relief by reason
of false and fraudulent representations, as to the character, qua-
lity, or situation of lands, I believe both courts of law and
equity grant relief upon precisely the same legal principles.
The party, receiving a conveyance of lands, who has been in-
jured by such fraudulent representations, has his election either
to sue the grantor and obtain compensation in damages, or to
file a bill in this court and have the fraudulent contract rescind-
ed, and both parties restored to the situation in which they were
before; at the expense of the fraudulent grantor.

The two courts will grant relief upon the same state of facts;
and hence they are said to have concurrent jurisdiction: but
the kind of relief which they grant is very different.   The one
court gives relief by compensation in damages, the other by
undoing all the parties have done under the contract, and re-
placing them in the position they occupied at first, and before
the contract was made.   In some cases, the result in each court
is nearly the same; as where, upon a conveyance of land, the
whole purchase money is paid, the grantee may procure a re-
cission of the deed, and a restoration of the entire purchase
money from the fraudulent grantor.   That is the only mode,
then, by which parties can be restored to their former posture.
The same substantial result would be reached by the judgment
of a court of law, giving damages; which, if the land was en-

tirely worthless, would be at least the whole amount of the purchase money.

In the case before me, if the contract between the parties had related only to the Illinois lands, and the complainant had taken a conveyance thereof upon such false and fraudulent representations as would have avoided the deed, and had paid the defendant $1100 in cash therefor, he might, in a proper case, have had the deed rescinded, and the purchase money restored to him. The error of the complainant appears to be in supposing that his bill presents precisely the case last supposed. As I understand the contract between the parties, it was an entire one, embracing several subject matters besides the Illinois lands. The defendant, it is true, contracted to purchase the complainant's farm for $4000. But the same contract provided that he should pay for it in a certain specified way; viz. by assuming the payment of certain mortgages, paying certain sums of money at certain times, and conveying 220 acres of land at $1100. It was not agreed between them that the farm was worth $4000 in cash, or that the Illinois lands were worth $1100 in cash. These sums were assumed merely as measures of value between the parties. It was only in substance agreed that the farm was worth the responsibilities assumed, the cash paid and agreed to be paid, and the 220 acres of land. The contract was an entire one, and must be taken together. Neither party is, however, for that reason, the less bound to act in good faith, or less responsible for fraudulent representations. If there was such fraud in it as upon settled principles would entitle the injured party to relief, he might obtain it in a court of law; by suing for damages, without rescinding the contract. But I understand he cannot come here for relief without rescinding the whole contract; and to do that he must offer to restore what he has parted with. He cannot select a portion or single subject matter of the contract, and say I will receive this, and the remainder shall stand good. Though he can come into this court, on the ground of fraud, I suppose he must ask the kind of relief which this court usually dispenses, and treat the contract here as an entire one; and ask the entire restoration of the parties to

---

Bradley v. Bosley.

---

their former condition, so far as it is practicable, or he will not be heard here, but left to such damages as a jury would give him.

This is the view that I should have entertained of the case as here presented, if the objection that the complainant had an adequate remedy at law, had been taken by demurrer or had been specifically set up in the answer. But no such objection is taken in the pleadings, and it is made for the first time at the hearing. It has been repeatedly held that such an objection comes too late at the hearing. (*Wiswall* v. *Hall*, 3 *Paige*, 313. *Underhill* v. *Van Cortlandt*, 2 *John. C. R.* 369. *Ludlow* v. *Simonds*, 2 *Caines' Cas. in Error*, 40.) It is too late, after a defendant has put in an answer submitting himself to the jurisdiction of the court, without objection, to insist that the complainant has a perfect remedy at law; unless this court is wholly incompetent to grant the relief sought by the bill. (*Grandin* v. *Le Roy*, 2 *Paige*, 509. *Hawley* v. *Cramer*, 4 *Cowen*, 727.)

This rule must prevail in this case, if this court is competent to give the relief sought by the bill. The relief asked, as we have seen, is of a character sounding entirely in damages. This has always been considered as a matter peculiarly proper to be passed upon by a jury; and this court will not generally entertain a bill to assess damages upon a mere contract. (*Hatch* v. *Cobb*, 4 *John. C. R.* 559.)

Sometimes it grants compensation in damages as incidental to some peculiar ground of jurisdiction, as in the case of a bill for specific performance, when performance has become impossible, and in some similar cases; but as a general rule it never entertains jurisdiction for the mere purpose of giving damages, and as the primary object of the bill. This bill prays indeed, that the deed of the Illinois lands may be rescinded, and the $1100 agreed to be the purchase money paid therefor, repaid. But we have seen that this court will not rescind this deed, or a part of the contract merely, without rescinding the whole; so that in the manner this case is presented, it is in effect but a mere action on the case for the recovery of damages, for the fraudulent representations as to the character and quality of the

Bradley *v*. Bosley.

Illinois lands. The mode of proceeding in this court does not render it an appropriate tribunal for the trial of such cases. They have always been deemed foreign to its jurisdiction, and they have been left to be passed upon by the courts of law, with the assistance of a jury. If we are to sit here and try such cases, merely because the defendant does not object in his pleadings, we may, by the connivance of parties, find before long that the functions of the court of chancery are turned from their legitimate subjects of exercise, and expended upon matters wholly foreign to its proper duties. The court itself will take care to preserve the landmarks of its jurisdiction better.

It cannot be supposed that this court would try an action of slander, or libel, by the command, sentence, or even consent of the parties; and yet such trials would, in my judgment, be but little different in principle, from trying causes like this, which, in its effect, is merely an action for damages, though it is for damages arising out of a fraud.

· It is not, however, proper or just that the defendant should put in an answer to such a bill, and involve the expense of taking proofs, raising no objections to the jurisdiction of this court, and then leading the complainant on in litigation; when upon the face of the bill itself the complainant shewed a case not proper to be heard here. He should have demurred, or not raised his objection at all at the hearing, unless he had at least intimated his intention so to do in the answer. For this reason he cannot have full costs. (*Murray* v. *Graham*, 6 *Paige*, 622.) This view of the case will render it unnecessary to examine the proofs as to the alleged fraudulent representations.

The complainant's bill is dismissed, but he is to pay the defendant such costs, and such costs only, as he would be entitled to on the allowance of a demurrer to the bill.

*D. H. Chandler*, for appellant. I. This court has jurisdiction of the subject matter stated in the bill, and may decree satisfaction, in damages, in the way and manner, and to the extent prayed for. Had the complainant brought his suit in a court of law, to recover damages for the alleged fraud, the only

remedy he could have had in that court, would have been the recovery of the difference between the price of the land, and its actual value; testing this difference by the price given, and its actual value as proved. But that court would have no power to cancel the deed executed to the complainant. The title of the property would still remain in him, and he would receive the difference in value. This court, has a more extended jurisdiction, as to the remedy, and may frame its decree so as to give the complainant a complete remedy, for the existing evil.

It is an old head of equity, that this court has concurrent jurisdiction with a court of law, in cases of fraud. Although a court of equity may not rescind an entire contract in part, yet if there is fraud, in a particular point, wherein the whole contract is not involved, the court will decree compensation to the injured party, and let the contract stand. (*Jobling* v. *Dooley*, 1 *Yerg.* 289.) Where a grantor conveys, fraudulently, a greater quantity of land than he has title to, this court will decree compensation to the vendee, for the deficiency. (*Duvall* v. *Ross*, 2 *Munford's Rep.* 290. *Bedford* v. *Hickman*, 5 *Call's Rep.* 236. *Anthony* v. *Oldacre*, 4 *Id.* 489.) So where the grantor had not title to the whole of the land conveyed, the court decreed compensation for the deficiency. (*Collard's heirs* v. *Groom*, 2 *J. J. Marsh. Rep.* 487.) He who sells property by a description given by himself, is bound to make good that description; and if it be untrue in a material point, although the variance may be occasioned by a mistake, he must still remain liable for such variance. (*M'Ferran* v. *Taylor*, 3 *Cranch*, 270.) It is claimed that there is a wide difference in regard to the action of this court, as to what remedy it will apply, in cases where the contract has been wholly executed, and where it has not. In cases where the contract has been wholly executed, as in this case, before a discovery of the fraud, this court has a right to give the injured party compensation in damages, instead of decreeing a recision of the whole contract; for to do that might be more prolific of injury than of benefit to the injured party. A decree annulling the whole contract for fraud, is founded upon the basis that it has not

been completed, and that its completion, according to its terms, would be injurious to the rights of the party aggrieved. Such decree is also fitting to a case where the complaining party has partly executed the contract, and files his bill to be relieved from the further performance, and for a re-payment to him of such sum as he may have paid. Besides, it is not necessary in this case, that the court should annul the whole transaction, in order to do justice. The complainant alleges, that in making payment for the land sold by him to the defendant, he, the defendant, was guilty of fraud, in the thing in which he paid. The complainant has tendered back the subject matter of such payment, and now by his bill, demands compensation in money for the thing by which he was defrauded. Neither party sets up or alleges any other matter in derogation of the validity of the contract. And in this particular alone, is there any question made by either party. The right of redress is as palpable as if the defendant had paid in forged bank notes ; or in personal property having latent defects, under the allegation of its being sound. The bill seeks indemnity, for the fraud, and for nothing else. It rests upon the same principle as if it had been filed for a specific performance of the contract. The conveyance of the Illinois land, being fraudulent in not passing such valuable interest as the defendant represented it to possess, is likened to a case where the party contracting to convey has not the title fee to the whole land conveyed. In such case this court would decree re-payment to the complainant of the proportionate part of the purchase money, with interest, if the purchase money had been paid. (*Pratt* v. *Law,* 9 *Cranch,* 458. *Simpson* v. *Hawkins,* 1 *Dana,* 305. *Collard's heirs* v. *Groom,* 2 *J. J. Marsh.* 488.) In such a case, too, this court, at the instance of the complainant, would decree a specific performance, as far as the same could be had, and issue a quantum damnificatus to assess damages as to the residue. (*Jones* v. *Shackelford,* 2 *Bibb.* 412. *Fisher's heirs* v. *Kay, Id.* 434. *Woodcock* v. *Bennett,* 1 *Cowen,* 711.) This court having concurrent jurisdiction with the courts of law in cases of actual fraud, and not being limited or restrained in the exercise of its equitable functions, can apply

the exact remedy needful to the exigency of every case. The remedy in a court of law, in this case, would only compensate the complainant for the difference between what he allowed for the land and the value as it is proved to be. (*Monell* v. *Colden*, 13 *John*. 395.) This would leave the title of the property still in the complainant, it being depreciated and unsaleable. This court has the power to decree the deed void, for the fraud, and to give the complainant a full compensation in money, as the measure of his damages. This alone can restore the complainant to his rights.

The vice chancellor arrives at the conclusion that it is inconvenient for this court to assess the complainant's damages; and that it is his duty to protect himself against the imposition of a jurisdiction which he regards, according to the framing of this bill, as belonging exclusively to a court of law, and therefore dismisses the bill. The principle contained in the vice chancellor's opinion in this particular is contested for the following reasons. 1st. The subject matter of the bill relating to the fraud alone, confers jurisdiction on this court; and having such jurisdiction, it will entertain the cause and decree the relief prayed for. (*Adamson* v. *Evitt*, 2 *Russ. & Myl*. 66, *reported in* 6*th Cond. Eng. Ch. Rep*. 399, 6 *Ves*. 173. *Reigal* v. *Wood*, 1 *John. Ch*. 402. *Collard's heirs* v. *Groom*, 2 *J. J. Marsh*. 488.) See also the authorities above cited touching this point. 2d. If the defendant was guilty of fraud in the sale of the Illinois land, the deed given by him therefor, was void ab initio for that cause; and the complainant not having taken any security for the land sold by him to the defendant, other than the deed of the Illinois land, had a lien upon the land thus sold, for $1100, the price of the Illinois land. This allegation alone, in the bill, confers jurisdiction upon the court, and draws after it all the other matters stated. Both vendor and vendee have their lien on the land sold, the former for the purchase money due, and the latter for what he has paid, in case it is restored to him. (*Farmer* v. *Samuel*, 4 *Litt. Rep*. 190.) A vendor of land, who has conveyed by deed, has a lien in equity upon the land, for the unpaid purchase money against

Bradley *v.* Bosley.

the vendee, or purchasers from him, with notice. ( *Watson* v. *Wells,* 5 *Conn. Rep.* 468. *Garson* v. *Green,* 1 *John. Ch.* 308. *Bagley* v. *Greenleaf,* 7 *Wheat.* 46, 50. *Outton* v. *Mitchell,* 4 *Bibb,* 239. *Galloway* v. *Hamilton,* 1 *Dana,* 576. *Ewbank* v. *Poston,* 5 *Monroe,* 287. *Wynne* v. *Alston, Dev. Eq.* 163.) The case of *Fish* v. *Howland and others,* (1 *Paige,* 20,) settles this doctrine fully, that the grantor of land has an equitable lien upon the estate sold, for the payment of the purchase money, and that this lien is not waived by the grantor's taking personal security; unless there is an express agreement between the parties that the equitable lien shall be waived. It is claimed, under this decision, that the agreement between the parties in this suit, that the complainant should take a deed of the Illinois land, and the actual taking it, was no waiver of the equitable lien which the complainant had on the land sold to the defendant; because the defendant defrauded the complainant, and hence the deed taken of the Illinois land, was void in its inception, and the agreement to take the deed was void also, for the same cause. The court having acquired jurisdiction, for the cause last stated, will retain the bill, and administer full justice between the parties. 3d. The general and true doctrine of this court is, that where parties, by consent, make a case for its determination, or where the complainant files his bill for a cause over which the court has not jurisdiction, or where a court of law has jurisdiction, or the party can obtain redress in a court of law, and the defendant does not demur or set up the objection in his answer, by way of demurrer, on account of jurisdiction, this court must of necessity hear and determine the case; unless it is wholly incompetent to grant the relief sought by the bill. ( *Grandin and Le Roy* v. *Smith,* 2 *Paige,* 509. *Hawley* v. *Cramer,* 4 *Cowen,* 726, 727, *and authorities there cited. Bank of Utica* v. *City of Utica,* 4 *Paige,* 400. *Fulton Bank* v. *N. Y. and Sharon Canal Co.,* 4 *Id.* 132.) The last case is in entire conflict with the vice chancellor's notion, that this court will not decide a cause where no demurrer is interposed, or objection taken, in the answer, if the court shall find that a remedy exists at law. That case holds it to be the duty of the court

in such a case, to hear and decide. 4th. The vice chancellor, however, seems to refuse to take jurisdiction of the case, mainly because this court is incompetent to give relief, or the relief prayed for; and he seems to regard himself as incompetent to administer the remedy consistent with the practice of the court. The bill asks, that the deed of the Illinois land may be declared void, and that the defendant may compensate the complainant in money, to the amount for which that deed was received, and also for the expenses incurred by him in his journey to settle upon the land. The compensation asked for is specific and easy of ascertainment, so far as relates to the matter of the land; and as respects the damages, on account of expenses incurred in the journey to see the land, it is equally easy of ascertainment, through the intervention of a master. But the defendant contests this last claim, by proving, or attempting to prove, that the complainant did not intend to settle upon the land. The case that the court is to adjudge, is that made by the bill; and it does not involve any thing more than has been stated, and the simple question is, has the court the power, by the legal means at its control, to give the relief asked for. If it has, it can and should act. If it has not, then the dismissal of the bill for that cause would have followed from necessity. Allowing the principle to be true, as adopted by the vice chancellor, of giving relief in a case like this, (which is not conceded,) still, the parties have made the very case embraced in the pleadings without objection by either. And the court has only to consider, if it has the power to give the relief asked for, as the case is made up.

This court, in the exercise of its ordinary powers, has at its control, two agents, whereby it can ascertain for the instruction of its conscience and judgment, all that is required to administer justice in this case; which agents it always employs, where it is in doubt, or where it would be inconvenient for itself to perform the duty. It may award an issue quantum damnificatus, which is done where the quantum of damages does not clearly appear, and it is proper for a jury to pass upon them. Or it may direct a reference to a master to inquire and take

Bradley v. Bosley.

proofs of the quantum of damages, and report such proofs, with his opinion thereon.

The court will never award an issue to be tried by a jury, unless the facts on which it is to decide are peculiarly adapted to the decision of a jury; or unless the conscience of the court shall need the verdict of a jury to support its decree. (*Apthorp* v. *Comstock*, 2 *Paige*, 482. *Nice* v. *Purcell*, 1 *Hen. & Munf.* 372. *Fornshill* v. *Murray*, 1 *Bland*, 485. *Townsend* v. *Graves*, 3 *Paige*, 453.) In the last case fraud was charged in the bill, and the testimony was conflicting, to a considerable extent; yet the chancellor adopted the opinion of Lord Redesdale, that " it would be attended with infinite mischief, if courts of equity were to hesitate in deciding questions where sufficient evidence is before them.". He held also that issues should not be directed except in those cases where there was a want of evidence; or where the testimony was contradictory, and so nearly balanced as to render it necessary to have an open and rigid cross-examination of the witnesses before a jury. There is no need of an issue or a reference in this case, so far as relates to the damages on account of the fraud. The price of the Illinois land is well ascertained by the consideration named in the defendant's deed to the complainant. The claim for damages set up on account of the journey made by the complainant from this state to Illinois, to examine the land, and as alleged to settle upon it, is not proved; that is, the quantum of expenses is not proved, although the going there for that purpose is proved. If damages for that cause, as an incident to the fraud, are allowable in this case, a simple reference to a master to take the testimony which the complainant may produce before him, will suffice; and this can be done after a decree settling the subjects of damages and making a reference for that purpose. But if that claim shall not be allowed, then the court can, by a simple computation of interest upon the sum of $1100, decide and decree the amount of damage at once.

II. The defendant was guilty of fraud in the representations he made to the complainant as to the situation and quality of soil of the Illinois land, and as to the quantity of timber grow-

Bradley *v.* Bosley.

ing or being thereon. Previous to the making the agreement the defendant had been upon the land and examined the same; and knew or professed to know its situation, quality and properties. But the complainant had never seen the land, and knew nothing of its quality or condition, except what he derived from the representations of the defendant, at and before the contract was made. The representations made by the defendant materially affected the value of the land, and operated as an inducement to the complainant to give a higher price than he would have done had the truth been told. This vitiates the sale. ( *Woods* v. *Hall, Dev. Eq. R.* 11.) *Suppressio veri*, or *suggestio falsi*, vitiates a contract. If an express representation turns out to be untrue, it is immaterial whether the party making it knew it to be untrue or not. The fact that he was ignorant of its truth or falsehood avoids the contract, if his representation is false. ( *Waters* v. *Wallingly*, 1 *Bibb*, 244. *Livingston* v. *The Peru Iron Co.*, 2 *Paige*, 390.) He who sells property by a description given by himself, is bound to make good that description. If it be untrue in a material point, although the variance may be occasioned by a mistake, he must still remain liable. ( *McFerran* v. *Taylor*, 3 *Cranch*, 270.) Where, by the misrepresentation of a fact relating to a circumstance which the complainant was entitled to know, or by the concealment of a fact which the defendant was bound to disclose, the complainant was induced to make a purchase, and in consequence sustained a loss, it was declared that an action at law could be sustained for damages. But that a court of equity, with respect to the fraud, had a concurrent jurisdiction, and would exercise such jurisdiction so as to give relief. ( *Adamson* v. *Evitt*, 2 *Russ. & Myl.* 66.)

III. The deed, from the defendant to the complainant, of the Illinois land, having been imposed upon the complainant by the fraud of the defendant, the complainant had a right to tender a re-conveyance of the land to the defendant; as a preliminary to an avoidance of it, and as the foundation of his claim to damages for the whole consideration of the deed. In the case of *Hoggins* v. *Becraft*, (1 *Dana*, 30,) it was decided that the vendee of a chattel, discovering a defect which the vendor fraudulently

concealed, might return or tender back the chattel, and thus rescind the contract, or retain it and recover damages. The same rule exists at law. True it is that this court has a right to decree the sale void, and compensate in damages to the full extent of the purchase money, upon the vendee's restoring to the party the property received. But it seems to be a peculiarly fitting measure, as applicable to a court of equity, that the party claiming to be aggrieved by the fraud of another should offer to restore the property received, before coming into this court for relief.

The complainant is entitled to a decree for all the damages consequent upon the fraud practised upon him. And it should be declared that he has a lien upon the land conveyed to the defendant, by him, to the amount of $1100, and the interest thereon from the 28th day of November, 1839, or from the 24th of April, 1840; that being the time when the deeds were executed; and that he have execution against the defendant for the collection of all the damages awarded to him.

*J. B. Skinner & O. Hastings*, for the respondent. With respect to the first claim, the counsel for the defendant insist that a bill cannot be sustained in this court merely for the recovery of damages on the ground of fraud. It has often been laid down as a general rule, that courts of equity and of law have concurrent jurisdiction in all cases of fraud. While this is true with respect to fraud as a foundation for relief, it does not hold with respect to the kind of relief administered by these tribunals; and courts of equity can no more entertain suits instituted directly for the recovery of damages, than courts of law can give relief by compelling the party to undo the fraudulent transactions and restore in kind the fruits of his fraud. In other words, the relief administered by these courts is different in kind; and while courts of equity act in a way peculiar to themselves, annulling the fraudulent transaction and compelling the party to restore what he has taken from the complainant by deceit, courts of law alone have the power to entertain actions instituted purely for the recovery of damages. It may not be

Bradley *v.* Bosley.

easy to reconcile all the cases with this proposition. It will be conceded, however, that there are cases in which courts of equity cannot give relief in damages. And the distinction now contended for is the only one which will prevent a conflict of jurisdiction between our courts of law and equity; and it is one indicated by the different modes of proceeding which prevail in these tribunals.

It would be exceedingly inconvenient for a court of equity to entertain actions merely for the recovery of damages. Questions of damages which arise incidentally, in causes where a court of equity has jurisdiction on other grounds, are generally sent to a court of law for determination ; except in cases where these damages are a mere matter of computation. (*Phillips* v. *Thompson*, 1 *John. Ch. R.* 150, 151.) And as a court of law is fully competent to give the required relief, there seems no possible reason for resorting to a court of equity for the recovery of damages in cases of fraud, which would not apply with equal force in favor of a suit in equity to recover the amount due upon a promissory note; or to recover damages for any violation of private right. But it is believed that this question is settled by authority. In the case of *Newham* v. *May*, (13 *Price*, 749,) the court of exchequer decided, that a bill filed simply for compensation, without other relief, to recover the difference between the actual and stated value of an estate sold, could not be supported on the ground of fraud; and that the jurisdiction of a court of equity to give damages in such cases, (cases of fraud,) was incidental to that of giving relief by enforcing the performance of contracts for the sale of real estate. See also the case of *Hardwick* v. *Forbes, adm'r,* (1 *Bibb*, 212.)

The cases cited by the counsel for the complainant are none of them cases of bills filed simply for the purpose of obtaining damages on the ground of fraud; and it is believed that no precedent for such a bill can be found. This seems a proper occasion for the court to draw a line of demarcation, which shall be visible to all, between those cases where a court of equity will, and where it will not, entertain jurisdiction in cases of fraud. Although there are cases in which the court has seemingly

entertained the question of damages in cases of this character, yet they may be disposed of without yielding the principle contended for.   The case of *Jopling* v. *Dooley*, (1 *Yerger*, 289,) cited by the complainant's counsel, appears, from the note of it, to have been a case where the complainant, by his bill, sought to rescind a contract for the sale of a lot of land, on account of a fraud, or misrepresentation, in respect to the lines of the lot sold; and in which the defendant resisted the claim.   The court refused the principal relief sought; and perhaps gave, by way of relief, a compensation in damages.   The case of *Adamson* v. *Evitt*, (2 *Russ. & My.* 66,) was a case where the defendant had negotiated the sale of an annuity, for three lives, to the complainant; and, as was alleged, had misrepresented the ability of the grantor of the annuity, or withheld important information from the complainant, with respect to the grantor's ability, for fraudulent purposes.   It also appeared that the defendant was a trustee for the grantor, of a certain lease, and of a certain portion of his salary out of which the. annuity was payable.   And the bill prayed that the defendant might be answerable for the loss. Although the court arguendo, held that the bill was sustainable, it was not sustained .in fact, but dismissed on another ground. The case of *Evans* v. *Bicknell*, (6 *Vesey*, 173,) was a case in which the complainant sought to charge a trustee for another, and the trust estate, with a sum of money obtained from the complainant by a third person ; to whom the trustee had fraudulently delivered the title deeds, for the purpose of enabling him to obtain the money in question.   The court held that the trust estate could not be charged, and dismissed the bill as to the cestui que trust, on that ground.   It also decided that the bill was sustainable as against the trustee for damages, on account of the fraud alleged, but dismissed it as to him because the fraud was not proved.

In all these cases, it will be seen, that the bill itself contained sufficient ground for relief, without resort to the position contended for on the other side.   In the case in *Yerger*, the right of the court to annul the contract on account of the fraud alleged, was undoubted.   And in the case in *Russell & Mylne*,

Bradley v. Bosley.

although it is not easy to tell what was in the bill, it is evident, from what was proved in the case, that it sought to charge the defendant as a trustee; and so the bill was sustainable on the ground of trust. And in the case in *Vesey*, one object of the bill was to charge an estate, of which the defendant was trustee, with the money claimed; and the cestui que trust was a party. So that this bill was also sustainable on the ground of trust.

In all these cases, then, the court had an acknowledged jurisdiction to give the principal relief sought for, and to try the questions upon which that relief was sought. Having jurisdiction for this purpose, although the facts failed to be proved, it would, upon the common principles of equitable jurisprudence, give the relief which was secondarily sought; as incidental to the principal relief prayed for. Besides, in two of these cases the bills were dismissed, and the points sought to be established by them, on the part of the complainant, were not involved in the decision of them. But it is said that the bill in the case before the court does seek to undo the fraudulent transaction, and restore the parties to the position they occupied before the sale. This is not true. The contract was entire. It was for the sale, by the complainant, of the farm in Le Roy; to be paid for partly in money, partly in assuming certain incumbrances upon it, and partly in the lands in the state of Illinois. The defendant has a right to say, upon the facts of the case, that but for the privilege of paying in part by a conveyance of the Illinois lands, he would not have bought the complainant's farm at all; and for that privilege he was willing to allow the complainant more than he could, or would, have paid in cash. It is submitted, that where the complainant agrees to receive land in part payment for his farm, and the defendant agrees to give it, no court has power to say he shall give money in lieu of the land. If he has been guilty of a fraud in misrepresenting the quality of the land, this court might, in a proper case, annul the whole contract, and place the parties in statu quo; or a court of law might give damages for the fraud. And it is believed that these are the only remedies which the complainant can have. The case cited from *Yerger* does not prove, if it has

Bradley v. Bosley.

been correctly explained, that the complainant can affirm those parts of the contract which suit him, and disaffirm those parts which do not. Cases may be found, perhaps, to sustain the position, that where the principal relief sought by the bill could not be granted, because the facts proved were not sufficient to establish the claim set up, the bill was dismissed; although it appeared that the party was entitled to some relief, incident to the principal relief sought. These cases proceed on the ground, that as the court could not give the relief principally sought, it cannot give the relief which is incidental, for the want of jurisdiction. This is to make the jurisdiction of the court depend upon the truth of the facts set forth in the bill. Such a position may be a sound one. The court has, in such cases, jurisdiction of the case made by the bill, and that is enough. If the facts proved do not sustain the case, then the bill will be dismissed, not for want of jurisdiction, but for want of proof. The case of *Phillips* v. *Thompson*, (1 *John. Ch. R.* 131,) sustains the position, which we think the correct one, that where the court has jurisdiction of the case made by the bill, it will retain the bill for the purpose of giving incidental relief; although the complainant fails in his proof as to the principal relief sought. There is no reason to believe that if the bill in that case had contained simply a claim for damages, it would have been retained.

With respect to the second ground on which the complainant claims relief, that of lien for the purchase money, there seems to be no foundation whatever for it.

In the case of *Ganson* v. *Green and others*, (1 *John. Ch.* 308,) it is said that this lien exists where, from the terms of the contract, it is not implied that the parties did not intend that the lien should be preserved. In other words, that where it does appear that the parties did not intend that the lien should continue, and did not rely upon it, there it will be held not to exist. The same principle is also found in the case of *Fish* v. *Howland*, (1 *Paige*, 20.) That case also contains the further position, that where the vendee has given any other security than his mere personal obligation, for the purchase money, the

Bradley v. Bosley.

lien will be regarded as waived. Much more would the lien be regarded as having been waived where the parties, upon the sale, did an act which they call a satisfaction of the purchase money. In the case under discussion the purchase money was actually paid, by the conveyance of the Illinois land; or otherwise paid or secured upon the land. Without doing violence to the facts, it cannot be pretended that either party thought of retaining a lien upon the lands sold; nor can it be denied that both parties intended, at the time, to extinguish all claim for the purchase money except upon the securities then in existence, or given at the time. If every fact contained in the bill, upon which the notion of a lien is sought to be sustained, were con ceded to be true, it would be perfectly clear that no lien existed in the case. Here the contract, so far as the present controversy is concerned, was that the defendant should pay in land, and not in money. The amount remaining due to the complainant, supposing the deed to be set aside, is due not in money but in land. The claim put forth in the bill is not for money due by contract, express or implied, but for damages on account of fraud.

In cases of fraud, the party may annul the contract and get back what he has parted with; which in this case would be the Le Roy farm. But this the complainant does not ask for, and could not have if he did, because he has put it out of his power to restore that which he received for it.

It may be said, perhaps, that inasmuch as the defendant did not object to the jurisdiction until the hearing, the objection came too late, and the court will give the relief sought. A doctrine like this is to be found in some cases; but it applies only where the relief sought falls within some one of the heads of equity jurisdiction. In such cases, although there is a complete and perfect remedy by way of suit or defence at law, the court will grant relief—holding that the defendant has waived his right to turn the complainant over to another forum. It is an old maxim that " consent cannot give jurisdiction." Suppose the complainant should bring a bill to be paid the amount due him upon a bill of exchange or promissory note, and the defendant should not object to the jurisdiction of the court; would the court for that

reason hear the cause? Or, suppose a bill should be brought by the complainant to obtain the possession of land in the occupation of the defendant; would the court try the right of possession, because the defendant did not object to the jurisdiction? If so, it would be in the power of suitors, without the consent of the legislature, to transfer the whole jurisdiction of our courts of law to this court.

A fair view of the evidence will not sustain the allegations of fraud contained in the bill.

*D. H. Chandler*, in reply. The counsel for the defendant assume and insist, that a court of law is the only tribunal which can award damages for a fraud committed, and that this court only exercises its power, in such a case, by annulling all that has been done, and restoring the parties to their original position; and that further than that this court has not the power to go. We insist that this court does, and always will, award damages where it becomes necessary to the due administration of equity between the parties; even touching matters over which chancery does not claim to have original jurisdiction, but which are incidents of the case made by the pleadings. In those cases where the bill makes a case confessedly within the jurisdiction of this court, but the prayer for relief is so broad that damages may be awarded instead of specific relief, and where either through the defect of proof to entitle the party to specific relief, or the inability of the defendant to respond to such specific relief as is specially asked for, this court acts in the way and manner presented by the emergency of the case. And if it is necessary, it resorts to the alternative of giving damages by way of compensation; in the same manner as a court of law would do. Or if it can grant in part, the specific performance of the relief prayed for, but for any of the causes before referred to, it cannot do so in whole, it then gives damages for the residue. This is a universal rule of this court; to confirm which, a reference to authorities is unnecessary.

The counsel for the defendant seem also to suppose that this court is restrained, in its jurisdiction, to certain specific matters;

Bradley v. Bosley.

and that to transcend such limits would render its decrees coram non judice, and hence void. It is true, that where the statute has limited or regulated the exercise of jurisdiction of the court in specific or other matters, aside from the general jurisdiction which it has, its acts which do not conform to, or rather which are in hostility to such special statutory provisions, might be void; or at least would not obtain judicial sanction or force. But being a court of general jurisdiction, which jurisdiction is to be exercised according to the forms of its practice, it is not restrained in the exercise of it as respects any subject, "unless it is wholly incompetent to grant the relief sought by the bill." Such is the doctrine in *Grandin* v. *Le Roy*, (2 *Paige*, 509 ;) and in *Hawley* v. *Cramer*, (4 *Cowen*, 726, 7.) Acting upon the principle here laid down, the chancellor held, in the case of *The Bank of Utica* v. *The City of Utica*, (4 *Paige*, 400,) that notwithstanding the complainant had a remedy at law more perfect than this court could administer, yet, inasmuch as the parties had stipulated that this court should exercise jurisdiction, that he could not refuse to exercise it; and he applied, in that case, the maxim *modus et conventio vincunt legem* to the question of jurisdiction. Furthermore, the doctrine of this case is in contradiction of the assertion of the defendant's counsel, that consent cannot confer jurisdiction. And it supports the principle before laid down, that the jurisdiction of this court, by consent, is as universal as its power to do justice.

But it is assumed by the defendant's counsel, that the court will decline the exercise of jurisdictional functions in all cases where the party has a remedy at law, although no objection is set up in the answer. The case of *Fulton Bank* v. *N. York & Sharon Canal Co.*, (4 *Paige*, 132,) settles beyond a doubt this question in favor of the accuracy of the complainant's position. In that case the chancellor distinctly lays down the rule, that if the defendant does not take his objection by demurrer, or in his answer, the court will adjudicate the case. And the defendant must be subjected to the extra expense of litigating the matter in this court; whether the subject matter of the case is or is not within the ordinary and acknowledged jurisdiction of the court.

And that case goes the length of saying, that although the bill alleges matter of jurisdiction, which the proof does not sustain, for the purpose of escaping a demurrer, yet that the defendant, to avoid the exercise of jurisdictional functions by this court, must deny such matter; and insist that as to the other matters the complainant has a remedy at law. In the case of *The Bank of Utica* v. *The City of Utica*, before referred to, the parties assented, by stipulation, to this court taking jurisdiction. Such stipulation could not confer a greater power upon this court than the omission of the defendant to take his objection in the answer. In either case, the parties would stand upon the same footing.

The bill sets up a claim for, and prays that this court may decree that the complainant have, a lien upon the Le Roy farm for the amount of his damages; or for the purchase money of the Illinois land. This matter in the bill confers jurisdiction upon this court. And by the case last referred to, this jurisdiction cannot be intercepted by the defendant's answer; whether the complainant is entitled to such lien or not by the proofs made in the case.

It is denied by the counsel for the defendant that this court will award damages, although fraud was committed. In the case of *Bacon* v. *Bronson and others*, (7 *John. Ch.* 199,) Chancellor Kent distinctly held, that the complainant was entitled to damages in such a case; and he decreed that the premises in regard to which the fraud existed should be sold to satisfy those damages, and made a personal decree against one of the defendants for any deficiency. He most distinctly held in that case, that where a party, by an act of fraud, had deprived another of his security, such party should be personally liable for the damages. To the same effect is the case of *McFerran* v. *Taylor*, (3 *Cranch*, 270,) on the equity side of the supreme court of the United States.

THE CHANCELLOR. Upon a careful examination of the testimony in this case, I think the complainant succeeded in establishing the fact that the defendant was guilty of a misrepresentation as to the situation of the Illinois lot, and the quantity of

Bradley v. Bosley.

wood and timber thereon, and as to the quality of the land; and that by such misrepresentation the complainant was induced to allow for that lot, upon the sale of the Le Roy farm to the defendant, much more than he would have done, if the facts had been truly stated to him. It is very evident, from the whole case, that the defendant knew he was dealing with a man who was wholly unacquainted with the situation and quality of the land in the Illinois lot; and who relied upon his representation of those facts, to enable him to form a proper estimate of what he could afford to allow for that lot, in part payment of the price he had fixed upon the Le Roy farm. The defendant, therefore, if he knew the facts in relation to the situation and quality of the Illinois lot, and the amount of wood and timber thereon, should have stated them truly. And if he did not know them, so as to be able to state them substantially as they existed, he should have frankly told the complainant so; in answer to the inquiries which the latter repeatedly made of him. It is true, a purchaser has no right to rely upon the price which a vendor asks for property, or even upon his statement of what it is worth, as evidence of its real value; but must form his own estimate of the value of the property, after ascertaining the facts upon which its value depends. Still, if the vendor, knowing that the purchaser is unacquainted with the land, makes a false representation as to any matter which, if true, would materially enhance the value of the property, he is in equity bound to make good his representation.

The vice chancellor, however, is right in supposing that this contract ought not to be rescinded in part; so as to compel the defendant to keep the Le Roy farm at the nominal price put upon it by the parties in this exchange of property, and to allow the complainant to rescind the contract so far as relates to the Illinois lot only, and to recover the whole $1100 at which that lot was estimated in the agreement for such exchange. Where a party has been defrauded by another in the purchase or sale of property, he may rescind the contract, so as to restore the parties to the same situation they were in when the contract was made; or he may affirm the contract, so far as it has been exe-

Bradley v. Bosley.

cuted, and claim compensation for the fraud. But it must be a very special case which will authorize the injured party to come into a court of equity to have a contract partially rescinded; and it must be one in which the court can see that no possible injustice will be done by such a course. In the present case, I am satisfied neither of the parties supposed the Illinois lot was worth $1100 in cash; nor would the complainant have been able to sell the Le Roy farm for the $4000 at that time, had he not agreed to receive the Illinois lands in exchange, at the rate of $5 per acre. The witnesses, who reside in the neighborhood of the Illinois lot, do not pretend that if it had corresponded, in all respects, with the defendant's representations, it could have sold for $5 an acre; or that other lands in that section of country, of the same character and quality which this was represented to be, and which were wholly wild and unimproved, were selling at anything like that price. It would not be equitable, therefore, to rescind the contract as to the Illinois lot only, and to compel the defendant to pay for it at that price; even if the allegation in the bill was true, that the lot was actually worthless and unfit for farming purposes, which is not the fact.

The complainant does not ask to rescind the whole sale; and to take back the Le Roy farm and refund to the defendant the moneys he has paid, with the interest thereon, after deducting therefrom the rents and profits received by the latter. He is only entitled, therefore, to be compensated for the difference between the actual value of the Illinois lot in the state in which it was, in November, 1839, and that value as it would have been, at that time, if the representations of the defendant had been true; with interest on such difference subsequent to that time. And the only remaining question for consideration is, whether the vice chancellor was right in supposing this court had not jurisdiction to give the complainant relief, upon the facts in this case.

The general rule is admitted, that in cases of fraud, a court of equity has jurisdiction, although the party may obtain relief in an action at law. In *Hardwick* v. *Forbes' adm'r*, (1 *Bibb's Rep*. 212,) the court of appeals in Kentucky decided that where

a fraud had been committed in the sale of personal chattels, and where the complainant did not seek to set aside the sale in toto, but merely to recover for a rateable deduction in consequence of the fraud or misrepresentation of the defendant, his remedy was at law and not in equity; as the ascertainment of the amount of such deduction belonged properly to a jury. And that decision was confirmed by that court in the subsequent cases of *Cocke* v. *Hardin*, (*Litt. Sel. Ca.* 374,) and *Blackwell* v. *Oldham*, (4 *Dana's Rep.* 195.) These decisions appear to be founded in good sense. And I am disposed to follow them so far as to hold that a bill in equity, for the purpose of obtaining a compensation in damages merely, to be paid by the defendant personally, cannot be sustained; where the defendant makes the objection at the proper time, by demurrer or answer, that the complainant has a full and perfect remedy by an action at law against the defendant. It is true, Lord Eldon, in the case of *Evans* v. *Bicknell*, (6 *Ves. Rep.* 174,) seems to think a court of equity will sustain a bill for the mere purpose of recovering damages for a fraudulent misrepresentation, by the defendant, by which the complainant is deceived and injured in making a contract. His opinion in that case, however, is more than counterbalanced by that of the late Chief Justice Marshall, in *Russell* v. *Clark's ex'rs*, (7 *Cran. Rep.* 69.) I may add, that the opinion of the late Chief Baron of the exchequer in England, is also in conflict with that of Lord Eldon on this question. In the case of *Newham* v. *Macy*, (13 *Price's Rep.* 749,) the bill was filed by the purchaser of an estate, to compel the vendor thereof to pay the difference between the actual value of the property sold and the value as it would have been, if the representation of the agent of the vendor, as to the amount of the rental, had not been false. And in reference to the question of jurisdiction, Alexander, C. B. says: "It is not in every case of fraud that relief is to be administered, in a court of equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud upon the sale of a chattel, no one, I apprehend, ever thought of filing a bill in a court of equity. The cases of compensation in equity, I consider to have grown out of the jurisdiction of the courts of

equity, as exercised in respect to contracts for the purchase of real property; where it is often ancillary, as incidentally necessary to effectuate decrees of specific performance. This, however, appears to me to be no more than a common case of fraud by means of misrepresentation, raising a dry question of damages—in effect a mere money demand."

In the case of *Burrowes* v. *Lock*, (10 *Ves. Rep.* 471,) Sir Wm. Grant, the master of the rolls, deferred to the opinion of the lord chancellor, in *Evans* v. *Bicknell*, as he was bound to do. But his decision in that case was right upon another ground. There the complainant was the purchaser of the interest of the defendant Cartwright, in a residuary fund; of which fund Lock, the other defendant, was the trustee under a will. The bill was therefore properly filed against both defendants, to obtain the portion of the trust estate which the vendor had not disposed of or incumbered previous to the sale. It was correct, then, to retain the suit for the purpose of also giving to the complainant full and perfect relief in relation to his whole claim, against the defendants, arising out of that contract; instead of compelling him to bring two suits, one at law and the other in equity therefor. For the same reason, the court of appeals in Virginia very properly sustained a decree, for the refunding of a sum which had been improperly obtained from the complainant, upon a fraudulent concealment of the quantity of the land sold; the bill having been filed not only for the recovery of that amount, which had been overpaid, but also to restrain the collection at law of a much larger sum, for which the complainant had given his bond before the discovery of the fraud. (*Anthony* v. *Oldacre*, 4 *Call's R.* 489.) So in the case which came before the courts of Tennessee, in 1834, (*Haywood* v. *Marsh*,) where the fraudulent vendees of property had disposed of a part of it before the fraud was discovered; the court set aside the sale as fraudulent, and revested the title in the complainant as to the part of the land which the defendants retained, and directed a reference to ascertain the damages, which he had sustained by the fraud, in respect to the part of the land which they had sold to other persons before the filing of the bill. Indeed, it may be consid-

ered as a settled principle of this court, in all cases of fraud, that if the party who has been defrauded is entitled to come here for any relief arising out of the contract in which he has been defrauded, and where it is necessary for him to allege and establish the fraud in order to obtain such relief, he may obtain full relief here, without resorting to a suit at law; although as to a part of the relief claimed he had a perfect remedy in an action at law for damages.

I think the case under consideration comes within that principle. Here, the Illinois lands were a part of the consideration to be received in payment for the Le Roy farm, which was conveyed to the defendant. And the vendor has, in all cases upon the sale of real estate, an equitable lien upon the estate sold for the unpaid purchase money, as between him and the vendee, unless there is either an express or implied agreement to waive such lien, although it is otherwise as to personal property. And where, by the fraud of the vendee, a part of the price of the lands sold in fact remains unpaid, although the vendor supposed he had been paid in full at the time, there is no waiver of the equitable lien for the part of the price that actually remains unpaid. Thus, if upon the sale of a farm, the purchaser should pay for the half of it in good money, and for the other half in the worthless bills of a broken and insolvent bank, from which nothing could be obtained, the vendee fraudulently representing such bills to be good and collectable, the vendor would have the right to elect, either to rescind the sale and have a reconveyance of the land, or to charge the land itself with the half of the purchase money which remained unpaid; as an equitable lien upon such land. And a person having an equitable lien upon land for the unpaid purchase money, may come into this court in the first instance, to enforce such lien; without resorting to a suit at law to recover the amount. So in the present case, although the complainant is not entitled to rescind the contract so far as relates to the Illinois lot merely, and is only entitled to the difference in value between the lot as it actually was and what that value would have been if the defendant's representation had been true, the price of the Le Roy farm remained unpaid, at the

time of filing this bill, to the extent of that difference. The complainant, therefore, had a right to come into this court to enforce such equitable lien against the Le Roy farm ; and as an incident to that relief, this court must ascertain the amount of such lien.

The complainant claims such a lien in his bill. And though he is under a mistake in supposing he is entitled to the whole $1100 and interest, his general prayer is broad enough to enable the court to give him what he is actually entitled to, upon the case made by his bill and by the evidence in support of the same. The decree appealed from must therefore be reversed with costs. And a decree must be entered, declaring that the representations of the defendant, in relation to the situation and quality of the Illinois lands and as to the wood and timber thereon, as proved in this case, were false and fraudulent as to the complainant; and that the complainant has an equitable lien upon the Le Roy farm for the amount of the difference in value between the Illinois lot as it was on the 28th of November, 1839, and the value it would have had if those representations had been true; together with the interest on that amount. If the parties agree upon the amount, the decree will direct the payment thereof, together with the costs of this suit; and if it is not paid within thirty days, together with the costs of the complainant, that the Le Roy farm, or so much thereof as may be necessary for that purpose, be sold by a master, upon a six weeks notice. But in case the parties cannot agree upon the amount, an issue is to be made up and tried at the circuit in Genesee county, to ascertain the same. The costs of the trial of the issue in that case, as well as the general costs in the cause, and all questions and directions as to the sale of the Le Roy farm to satisfy the amount of the lien, and other questions and directions, are to be reserved until the amount to be paid, including interest up to the time of their verdict, shall have been ascertained by the jury. The depositions in this case, so far as they are applicable, are to be read before the jury ; but with liberty to either party to produce before the jury any other evidence relevant to the question to be decided upon the trial of such issue.