Coit *v.* Fougera.

[KINGS GENERAL TERM, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]

---

### COIT *vs.* FOUGERA,

Whenever a vendor has manifested an intention not to rely on his lien upon the lands sold, for the purchase money, he will be considered as having waived it.

So if a vendor, for a portion of the purchase money, agrees to take a conveyance of other property, and a deed of such property is accordingly executed by the vendee, and delivered in escrow, the lien of the vendor will be gone.

If, in such a case, the depositary refuses to deliver the deed, the remedy of the vendor is upon the agreement of sale between him and the purchaser, to compel the delivery of the deed.

THE plaintiff owned a store and lot in Atlantic street, Brooklyn, valued at $30,000, which was subject to incumbrances. The defendant owned a house and lot on President street, unincumbered, valued at $5100. The parties agreed to exchange these properties; the defendant to pay the difference in such values, by assuming a mortgage on the

Atlantic street property, assigning a chattel mortgage and paying a balance in cash; the properties to be respectively conveyed, free from incumbrance, except the mortgage so assumed. The plaintiff executed and delivered a deed of the Atlantic street property, subject to the mortgage. The defendant assigned the chattel mortgage, paid the balance in cash, and put a deed for the Pacific street property in the hands of Henry Alker, *in escrow.* So far, the facts are undisputed. The plaintiff claimed that the only condition of the escrow was, that he should cause two judgments for about $4000, which were a lien on the Atlantic street property, to be satisfied or released. The defendant claimed that the escrow was upon the further condition, that certain charges for interest, insurance, &c. should be paid. The two judgments were not satisfied of record until the 23d of January, 1860; and the defendant had no notice of such satisfaction until after the commencement of this action in February, 1860. The difference between the parties, respecting the claims of the defendant against the plaintiff, has never been adjusted. The defendant put the plaintiff in possession of the house and lot on President street, at about the date of the agreement; and the latter has ever since been in possession, letting and insuring the house, altering it and receiving the rents, and has made a contract in writing to sell the house to his tenant. The complaint was dismissed, on the ground that there was no pecuniary debt, and no equitable mortgage to foreclose. The plaintiff appealed from the judgment.

*B. W. Bonney,* for the appellant.

*J. M. Van Cott,* for the respondent.

*By the Court,* EMOTT, J. The only question in this case is whether the plaintiff is entitled to a lien as vendor, upon the property which he conveyed to the defendant at the corner of Atlantic and Clinton streets, in Brooklyn, for that por-

Coit *v.* Fougera.

tion of the price which he alleges to be unpaid. Whether the plaintiff can recover this portion of the price in money of the defendant is a different inquiry, and would be determined upon different principles. It would be plainly unjust in a case like the present, brought to assert a specific equitable right, and to enforce the corresponding remedy, if we are satisfied that such a right does not exist, to give the plaintiff a money judgment, carrying with it the costs of an action, which was defended to resist the enforcement of the lien, and would have been differently defended, or perhaps would not have been defended at all, if its purpose had been simply to recover a judgment for the consideration money of the sale.

The plaintiff was nonsuited at the trial, and we are therefore to assume the case made by his evidence as true. Taking that statement of the facts, they are substantially these: In May, 1858, the parties made a verbal agreement for a sale or exchange of real estate. The plaintiff agreed to sell and convey to the defendant a store and lot on Atlantic street, Brooklyn. The consideration named in the deed, or the price or value put upon this property, was thirty thousand dollars. Of this, a part was to be paid by assuming certain existing incumbrances on the property; a part was to be paid by an assignment of a chattel mortgage and debt against a third party; a part was to be paid in cash; and for the residue, $5100, the defendant was to convey to the plaintiff a house and lot in President street, valued at that sum. The plaintiff executed a conveyance of the Atlantic street property to the defendant, on the 16th of June, 1858. On the same day the defendant paid the money which was stipulated, and assigned the chattel mortgage. The specified incumbrances on the plaintiff's land were at the same time assumed by the defendant, by the acceptance of the deed with a suitable clause inserted in it. The defendant was ready to convey to the plaintiff, or to a person designated by him, the house in President street, which was to satisfy the residue of the consideration. But it appeared that there were incumbrances

against the Atlantic street property, beyond those which the defendant was to assume, and that the plaintiff had been unable to remove them.  The deed of the President street property was therefore, for the protection of the defendant, delivered to a Mr. Alker who was his attorney, upon condition that all incumbrances upon the Atlantic street property, other than those assumed by the defendant, should be removed.  When this should be done, Alker was to deliver the deed to the plaintiff.  The plaintiff went into possession of the property in President street, repaired it, rented it, collected the rents mainly, and altogether since 1859, and has contracted to sell it.  In July, 1858, the plaintiff procured releases of the Atlantic street property from the judgments, and by his attorney, Mr. Husson, tendered them to the defendant and to Alker the depositary of the deed, but the deed was not delivered or given up.  In January, 1860, the plaintiff procured these incumbrances to be canceled of record, and again called for the deed which had been left in escrow.  The delivery of the deed was still refused, and the defendant stated that he had taken it out of Alker's possession.  Both Alker and the defendant refused to give up the deed until certain other claims of the defendant were satisfied.

The lien of a vendor upon the estate conveyed, for the purchase money of that estate until it is paid, rests upon the doctrine that it is inequitable that the purchaser should have the land, and yet refuse to pay the consideration.  The doctrine of such a lien on lands sold is an anomaly.  There is the same equity in the case of a sale of chattels, but no such doctrine obtains in reference to these.  The lien of a vendor of real estate, however, is perfectly recognized, and the general rule creating it is never denied.  But it is subject to this marked qualification, that whenever the vendor has manifested an intention not to rely upon his lien on the lands sold, for the purchase money, he is considered to have waived his lien.  Farther, it is well settled that whenever any distinct or independent security is taken, as by a mortgage of other

Coit *v.* Fougera.

land, or the responsibility of a third person, the lien is considered as waived. Such a distinct and independent security, in the language of an eminent writer, is evidence that he did not trust to the estate as a pledge for his money. (*Sugd. Vend. p.* 861.) Notwithstanding the doubts of Lord Eldon on this point, in the noted case of *Mackreth* v. *Symmons,* (15 *Ves.* 349,) this doctrine is now settled, both in England and in this country. (*See Fish* v. *Howland,* 1 *Paige,* 20, 30.) Assuming in the present case that this is a contract for the sale of the plaintiff's property at a specified price, it will be seen that if the purchase money had been secured by a mortgage upon the President street property, there could have been no lien asserted or obtained by the plaintiff upon the Atlantic street lot. So if the defendant had merely agreed to pay $5100 for the plaintiff's land, and the plaintiff had taken a conveyance, in any form, of the house and lot in President street, to secure it, the inference of the law would be that he intended to rely on that security, and not on his lien. Upon similar principles a lien will not be raised to protect a vendor, where his conveyance is made in consideration of covenants for the payment of annuities, or of stock, or securities substituted for the price. (*See Nairn* v. *Prowse,* 6 *Ves.* 752; *Clark* v. *Royle,* 3 *Sim.* 499; *Parrott* v. *Sweetland,* 3 *Myl. & Keene,* 655.) But this case must fall under one or the other of these heads, and either way the court cannot assume that the vendor intended to rely upon his lien. If the $5100 is to be regarded as a price payable in money, the conveyance of the President street property was a security for its payment, of at least as high a character as a mortgage, and must be fatal to the existence of any lien upon the estate sold. If, on the other hand, the conveyance by the defendant is to be regarded as a substitute and not a security for purchase money, it is, if possible, still plainer that no lien exists.

It does not weaken the force of this objection to the plaintiff's case, that by the misconduct of Alker the depositary,

or of the defendant, the plaintiff has been prevented from receiving the benefit, or at least the full benefit, of the property which was to be the security, or more correctly, the payment of his price. It nevertheless remains that he received the possession of the property, with the delivery of the deed in escrow, and relied upon that deed and upon the fidelity and good conduct of the agent selected by both parties as its depositary, for the payment of his purchase money. Assuming the state of facts which appeared upon this part of the case when the nonsuit was granted, the plaintiff made out a right to the delivery to himself of the deed in escrow, and if he did not establish in that way a complete title to the land, he had at any rate a perfect remedy to compel the delivery of the deed.

It need not be denied, that if by the fraud of the vendee a part of the purchase money remains unpaid, when the vendor supposed it had been paid at the time, a lien may be asserted for that portion. That is the doctrine declared by Chancellor Walworth in *Bradley* v. *Bosley*, (1 *Barb. Ch. Rep.* 125, 152.) If in the present case the defendant had fraudulently represented that he was the owner of a house and lot worth $5100, and so induced the plaintiff to accept the conveyance of it in payment of that sum, when in reality no such property existed, or he was not its owner, or if he had fraudulently misrepresented its value, or his title, the result would have been that the purchase money would have remained unpaid *pro tanto*, by the fraud of the purchaser, and the court might have seen no reason to suppose that the ordinary lien was relinquished or waived.

But the plaintiff is embarrassed here, not by any fraud of his vendee in the sale or the payment made at the time, but by the misconduct of a third party in respect to the security, or the mode of payment which he accepted. His grievance is not that the defendant did not pay him, because the payment was completed by the delivery of the deed, but that he has prevented the completion of the transaction

through which the payment was to be made, by inducing the depositary of the deed to refuse to perform his duty. The right of the plaintiff is to have this duty performed, and the transaction thus completed, and his remedy is upon the agreement for the delivery of the deed, and not to enforce the equities which might have grown out of the original contract of sale, if the conveyance, with the accompanying agreement for its delivery, had not been substituted for the payment of the purchase money.

The judge at special term was correct in holding, that no case was shown here for the enforcement of a vendor's lien, and his judgment must be affirmed with cost.

