Camp *v.* Gifford.

—————— • • • ——————

## HERMAN CAMP *vs.* CHARLES C. GIFFORD AND CHARLES H. GIFFORD.

As between the original parties to a sale and conveyance of land, where the consideration is money to be paid, and the whole or any part of the same remains unpaid, then the presumption is that a *lien* for the unpaid purchase-money exists, in favor of the vendor; and it is incumbent on those denying its existence to prove that the vendor has relinquished such lien.

But when the vendee, in consideration of the conveyance to him of the land, has undertaken to do and perform a collateral thing specified, such promise is regarded as payment of the price of the land, and there is no lien.

Whether or not, in such a case, the vendor can have or demand money, from the vendee, is uncertain and dependent upon a contingency which may never happen; and if it shall, it is uncertain when, or in what amount. The right to demand money can only arise upon non-performance of the agreement of the vendee to do the particular thing promised.

Upon the execution and delivery of a deed from the plaintiff to C., his daughter, the latter, as a consideration for the making and delivery thereof, promised and agreed, to and with the plaintiff that she would clothe, care for, support and maintain R., the plaintiff's wife, during the remainder of her natural life.  The deed expressed a money consideration, but none was in fact paid, or agreed to be paid.  It appearing that the grantee had fully performed her promise; *held* that, in the absence of any allegation or claim that she had failed to perform, the plaintiff could not maintain a suit in equity to establish a *lien* upon the land conveyed, for the purchase-money.

THIS is an action in equity, and was tried by the court, without a jury.

The following facts were found by the court:

1st. That Abner W. Camp, late of the town of Dunkirk, died the owner in fee simple of the lands and premises described in the complaint. That he left a last will and testament, which has been duly admitted to probate, by and before the surrogate of Chautauqua county. That in and by such last will and testament, he devised the use of all his property, including such premises, to the plaintiff, a brother of the testator, for and during his natural life, and the remainder over to Catharine Camp, the daughter of the plaintiff. That at the time of the death of said Abner W. Camp, the said Catharine was unmarried, and was a member of the plaintiff's family, and was provided for by him.

2d. That on the 7th day of January, 1866, Roxanna Camp was the wife of the plaintiff, and a lunatic; that the plaintiff lived on said premises; and the said Roxanna his wife, and the said Catharine his daughter, lived on said premises, as members of the plaintiff's family, both of them supported and maintained by him.

3d. That on the day last named, the plaintiff, by deed containing no covenants, expressing on its face a consideration of $500, and therein acknowledged to be received and paid, released and conveyed to his daughter Catharine all his interest and estate of, in and to said premises. That in fact the said $500 was not paid, and was never agreed to be paid, by said grantee. That at the time of receiving the said deed, and as a consideration for the making and delivering of the same by the plaintiff, the said Catharine promised and agreed to and with the plaintiff, by parol, and not in writing, that she would clothe, care for, support and maintain the said Roxanna Camp during the remainder of her natural life; but such contract contained no provision as to the place where such support should be given. But it was

understood and agreed that it should be in the family, and under the supervision of the said Catharine. That at that time it was contemplated that the said Catharine would very soon thereafter intermarry with the defendant Charles C. Gifford; and they did, within a few days thereafter, in fact intermarry.

4th. That the said Catharine died intestate in March, 1868, leaving her surviving, the defendant Chas. C. Gifford, her husband, and the defendant Chas. H. Gifford, her son and only heir at law.

That during her lifetime, the said Catharine, after her marriage, lived and resided on said premises, and in all respects, as provided in and by her agreement, clothed, cared and provided for, and maintained the said Roxanna in her family, on said premises. That the said Catharine died the owner of said premises, never having, in anywise, incumbered the same.

That after the death of said Catharine, and up to a short time prior to the commencement of this suit, the defendant Charles C. Gifford supported and maintained the said Roxanna, and since that time the plaintiff has provided the means for her support.

That, as matter of fact, the defendant Charles C. Gifford is the administrator of the estate of the said Catharine; but out of what moneys, or in what capacity, he has provided for the support of said Roxanna does not appear from the evidence.

That it does appear that the plaintiff, in virtue of his marital relations with the said Roxanna, is under a legal obligation to provide for her support and maintenance.

5th. That in and by the last will and testament of the said Abner W. Camp, deceased, he appointed the plaintiff sole executor of such will; and the latter took out letters testamentary, and entered upon the discharge of his duties as executor. That in the autumn of 1870, many questions arose and controversies existed between

Camp *v.* Gifford.

the plaintiff as executor and in his own right, on the one side, and the defendant Charles·C. Gifford as administrator, and the defendant Charles H. Gifford, on the other, as to their respective rights and interests in the estate of the said Abner W. Camp, and as to the extent of such estate, and the amount of assets in the hands of the plaintiff as executor, unaccounted for, and as to the state of his accounts, and whether or not there was a deficiency of assets to pay the debts and obligations of the said testator, and whether or not, to meet such deficiency, a resort would have to be made to the premises described in the complaint. That proceedings were then pending in the surrogate's court, in and for the county of Chautauqua, for the final settlement of the accounts of the said executor; and to oppose such accounting, and to protect their own rights and interests, both of the defendants had appeared, Charles C. Gifford as administrator, &c., and Charles H. Gifford by his guardian *ad litem.* That all controversies of the nature and character above stated were compromised and settled.

That at the same time, negotiations were had between the plaintiff in his own interest and in his individual capacity, and the defendant Charles C. Gifford, of and concerning the support and maintenance of the said Roxanna; and the instrument in writing dated December 22, 1870, and signed and sealed by the defendant Charles C. Gifford, contains the terms of such agreement, and was delivered to the plaintiff as a complete and executed agreement, and he took the same into his possession and keeping, and produced the same on the trial of this action, upon the call of the defendants.

6th. That the plaintiff has never prosecuted any action against the defendant, as such administrator, for the non-performance of the agreement of the said Catharine, deceased, to provide for, support and mantain the said

Roxanna; nor any action against the said Gifford individually, for the non-performance of that agreement.

Mr. *Morris,* for the plaintiff.

Mr. *Holt,* for the defendant C. C. Gifford.

Mr. *Edwards,* for the defendant C. H. Gifford.

BARKER, J. The fundamental legal proposition presented upon the foregoing facts is — did the plaintiff have and retain a lien, in equity, upon the premises conveyed by him to his daughter, as a security for the performance of her promise to support and maintain her mother, the wife of the plaintiff, during her natural life? The only consideration for the deed was such promise. No money consideration was stipulated for, by the terms of the bargain and sale.

The plaintiff's whole case rests upon the truth of this proposition. If the same cannot be affirmed as being the law in this state, then he has failed to show a case for the relief sought.

The English chancery doctrine of the vendor's equity lien for unpaid purchase-money, when he has made an absolute conveyance of the land, has been adopted in this state and in some of the other states, with qualifications and modifications. In some of the states the rule has been wholly repudiated and condemned, and has no existence in their equity courts.

As between the original parties, where the consideration for the sale was money to be paid, and the whole or any part of the same remains unpaid, then the presumption is, the lien exists, and it is incumbent on those who deny the existence of the lien to prove that the vendor has relinquished it. (4 *Kent's Com.,* 152. *Garson v. Green,* 1 *John. Ch.,* 308. *Story's Equity,* §§ 1217 to 1228. *Fish v. Howland,* 1 *Paige,* 20.)

Camp *v.* Gifford.

In many other cases the doctrine is upheld and applied.

Does the case made by the plaintiff come within the rule thus established? I think it does not; and it is so held by every English and American case on that subject reported, and by the leading elementary writers of both countries. °

It is worthy of note that the elementary writers, Kent, Story and Sugden, while writing upon this topic, use the phrase, "*unpaid purchase-money*," in its most literal sense and meaning — as applicable to cases where the vendee has promised to pay the consideration in money.

Where the vendee has undertaken to do and perform a collateral thing in consideration of the conveyance of the land to him, such promise is regarded as payment of the price of the land, and there is no lien. Whether or not, in such a case, the vendor can have or demand money from the vendee is uncertain and contingent, and may never happen, and if it shall, it is uncertain when, or in what amount. The right to demand money can only arise upon non-performance of the agreement of the vendee to do a particular thing. Chancellor Kent, in his Commentaries, says the lien is not reserved, where the object of the sale was not money, but some collateral benefit. (*See supra.*)

Story says, the lien ceases, by the Roman law, where anything is taken in satisfaction of the price, although the payment had not been positively made. (*See* § 1223.)

In *Mackreth* v. *Symmons*, (15 *Vesey*, 329,) an important and leading English case, on this subject, Lord Eldon holds that if the vendor has taken the promise of the vendee to do more than to pay money, the lien is relinquished.

In *Coit* v. *Fougera*, (36 *Barb.*, 195,) the court, in its opinion, states and affirms propositions similar to those contained in the foregoing authorities.

In *Hare* v. *Van Duesen*, (32 *Barb.*, 92,) the question up and discussed was, when the lien was waived. The learned judge stated two classes of cases, where it would not continue. One, where the parties have agreed to substitute something else for the unpaid purchase-money — as the covenant or obligation of the vendee to do some collateral act. And also where, at the time of the conveyance, the transaction is so far complete that no present debt or obligation is owing by the vendee to the vendor.

I concur in both of these propositions, as being the result of the adjudications in this and the other states where the general rule prevails.

The editors of, and commentators upon, Leading Cases in Equity, have given these questions much consideration, and fully sustain the rule which I follow in disposing of this case. (*Lead. Cases in Eq.*, vol. 6, *p.* 248. *See also McKillip* v. *McKillip*, 8 *Barb.*, 552.)

In *Brawley* v. *Catron*, (8 *Leigh*, 522,) it was held in Virginia, that the lien would not be sustained as a security for unliquidated and uncertain damages, and does not exist in a case where the consideration for the conveyance of the land is an engagement by the vendee to support the vendor during life.

The daughter of the plaintiff did not agree to pay money to him for the deed. Her sole promise was to support her mother. It was to do a certain thing as the sole consideration for the conveyance. It would be most unreasonable to say, with such an agreement on her part, that the parties intended that the vendor should have a lien on the land; that she did not acquire all the vendor's interest in the land; and that she could not convey a full and complete title to a purchaser, so long as her mother lived, although she should fully perform, day by day, her promise to provide for her. The transaction was a mere family arrangement, being wholly devoid of those elements essential to up-

hold a lien, in the nature of a mortgage, which can be enforced by proceedings *in rem*.

Having reached this conclusion, I shall not consider any of the other propositions presented by the defendants, in avoidance of the plaintiff's right to the relief asked for. I put my adjudication upon the single legal proposition stated and considered.

I have intended to pass upon every question of fact raised by the evidence, except the one, whether Camp specifically relinquished, at the time of the settlement, any lien he might have on the house and lot. That, I deem wholly unnecessary to pass upon, after holding that there never was a lien.

The plaintiff's complaint is dismissed, upon the merits, with costs.

Complaint dismissed.

