ALONZO K. FLORIDA, Plaintiff in Error, v. J. W. MOR-
RISON, Defendant in Error.

St. Louis Court of Appeals, April 21, 1891.

1. **Vendor and Vendee:** FALSE REPRESENTATIONS BY VENDEE IN REGARD TO OTHER PROPERTY GIVEN IN EXCHANGE : VENDOR'S EQUITABLE RIGHT OF ACTION AND LIEN FOR HIS DAMAGES. When a vendee of land, who gives other specific property in part payment or exchange, fraudulently makes to the vendor a false representation in regard to the quality, character or value of such other property, and such misrepresentation forms a material inducement to the vendor's contract of sale, the vendor can maintain an action in equity against the vendee to charge the land with an equitable lien for the difference between the value of such specific property, as represented, and the actual value thereof.

2. ——— : ——— : SCIENTER. The fraudulent misrepresentation which will entitle an injured contracting party to equitable relief need not be of the character necessary to support a common-law action for deceit. Such action for deceit rests upon a fraudulent motive, a *scienter*, an intent to cheat or deceive ; but when one party to a contract, in entering into it, acts to his loss upon a false statement of a material fact, made to him by the other contracting party, it is not essential to his right to equitable relief that the statement should have been made with knowledge of its falsity.

3. ——— : ——— : SUFFICIENCY OF PLEADING OF FRAUD. The averments of a petition, charging fraudulent misrepresentations by a vendee of land, are considered and *held* sufficient.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Christian & Wind,* for plaintiff in error.

In this state a vendor has a lien for unpaid purchase money. *Davis v. Lamb,* 30 Mo. 441; *Bledsoe v. Gaines,* 30 Mo. 448 : *Davenport v. Murray,* 68 Mo. 198. The lien exists where there is an exchange of properties

instead of a sale. *Pratt v. Clark*, 57 Mo. 189; *Pratt v. Eaton*, 65 Mo. 160; *Linville v. Savage*, 58 Mo. 248; *McMurray v. Brown*, 91 U. S. 257. The bill states a cause of action. *Bradley v. Bosley*, 1 Barb. Ch. 125; *Coit v. Fougera*, 36 Barb. 195; *Toby v. McAllister*, 9 Wis. 463.

*Thomas P. Bashaw*, for defendant in error.

(1) The well-settled rule is that a vendor, who has taken a deed in exchange of lands, will be considered as having waived his vendor's lien unless an actual fraud was perpetrated upon him. *Coit v. Fougera*, 36 Barb. 195, and cases cited; *Buford's Adm'r v. Guthrie*, 14 Bush. 690. (2) And, although fraud may be alleged and shown, a court of equity will not interfere to enforce a vendor's lien, thus partially rescinding the contract, unless the court can see that no injustice will be done by such a course, and particularly when the vendor has a plain, adequate, ample and effective remedy at law. All the authorities sustain this position. *Bradley v. Bosley*, 1 Barb. Ch. 125. (3) Plaintiff's bill does not bring his case within this well-settled and salutary rule; because, although he alleges that he "sold" to defendant the real estate in question, it sufficiently appears from the whole bill that it was an exchange of properties. There is no averment that any of the representations made by defendant as to the LaSalle county tract were untrue, except as to its value and the title. There is no averment that the defendant knew that the said representations were false. The alleged defects in the title are not sufficiently stated, and, for aught that appears, none of them constitute even a cloud upon the title. There is no averment that plaintiff's property was worth more than the property he received in the exchange, leaving out the LaSalle county tract. There is no allegation that defendant is insolvent, nor anything to negative the fact that plaintiff has a complete, ample and adequate remedy at law.

There is nothing in the bill showing any actual or intentional fraud. (4) The defendant would have the right, under the state of facts disclosed by plaintiff's bill, to make his title good. *Buford's Adm'r v. Guthrie*, 14 Bush. 677.

THOMPSON, J.—In this case the court sustained a demurrer to the plaintiff's petition, and the plaintiff prosecutes a writ of error to this court. The petition is as follows:

"Now comes plaintiff, and, by leave of court, files this as his amended petition.

"And for his complaint says:

"That, on the fourteenth day of September, 1887, he sold to defendant the following-described real estate situated in the city of St. Louis and state of Missouri, to-wit: Eight dwelling-houses on northwest corner of Hickory and Joab streets, and the ground on which same are situated, to-wit, lots 28, 29 and 30, in block 6, of Tony's addition, city block 1370.

"That, as the consideration for said real estate, defendant gave him a farm in Monroe county, Missouri, also thirty head of mules, and also his notes for the sum of thirteen hundred dollars ($1,300), secured by a deed of trust on the real estate conveyed to defendant, and also the west twenty (20) acres of the southeast fractional quarter of section 6, township 33, range 4, east of the third principal meridian, in the county of LaSalle and state of Illinois.

"That, by the terms of the agreement, the title to the real estate conveyed by plaintiff to defendant, and that conveyed by defendant to plaintiff, was to be free and clear of any incumbrances, and each was to make to the other good and sufficient general warranty deeds to the said real estate.

"That, in pursuance to said agreement, plaintiff did make to defendant a good and sufficient deed to said real estate so conveyed to him.

"That defendant made to plaintiff a general warranty deed to the real estate so conveyed to him, gave him the deed of trust for thirteen hundred dollars ($1,300), and delivered to him the mules as agreed upon in said contract.

"Plaintiff says that he had seen and examined the farm in Monroe county, Missouri, and the thirty (30) head of mules. That a price was agreed upon as the value of said farm, and also as to the mules, and also as to the twenty (20) acres in LaSalle county, Illinois.

"That he had never seen the said LaSalle county land, nor had he examined, or had examined, the title thereof..

"But that defendant had represented the land to be valuable and of good quality, near a town, and of the value of two thousand dollars ($2,000), and that the title to same was perfect and free from any lien or incumbrances.

"That the consideration paid for said real estate was $2,000.

"That plaintiff relied solely upon the statements made by defendant as to the quality, value and title to said real estate, of which the defendant well knew.

"That, so relying on the statements of the defendant as aforesaid, the defendant, with the purpose and intent to cheat and defraud him, falsely and fraudulently stated and represented that he had the title to said real estate examined, and that the same had been forwarded to him by mail, but, for some reason unknown, the same had not been received by him, but he assured plaintiff that title to said real estate was perfect, and that his deed to same conveyed him a good and sufficient title thereto.

"That plaintiff relied solely upon the statements and representations of defendant, and, believing them to be true, accepted the said deed to said land as a payment of the sum of $2,000, and a part of the consideration for

the said real estate so conveyed by plaintiff to defendant as aforesaid.

"Plaintiff further says that afterwards he had the said LaSalle county real estate examined, and found that the same was not valuable land; that it was not worth $2,000, but that the sum of $500 would be a good price for same, and that it was not worth more than $500, if the same had been free of incumbrances and the title to same had been perfect as stated by defendant.

"Plaintiff further says that, upon an examination of the title, there were the following defects in said title:

"A mortgage on said real estate, dated July 2, 1875, for the sum of $500, which has not been satisfied; also another mortgage of $500, dated December 10, 1877; also a lease on two and one-fourth acres of said tract for the purposes of taking the coal out of said land; also the said land has been sold for taxes, and one, J. B. Johnson, has a tax title on same.

"There is also a certificate of sale under confession of judgment by H. A. Howland, who, at the time, was the owner of, or had an interest in, said real estate, in favor of J. H. Morrison, who has assigned his interest to Ann Eliza Morrison, who has a deed from the sheriff of said county, dated August 10, 1883.

"That, immediately after plaintiff had discovered that the land was of little value and that the title to same was imperfect, and of the great fraud and wrong perpetrated by the defendant, he made out in proper form a deed reconveying to defendant all the title to said real estate so conveyed to him and tendered the same to defendant and demanded of him the said sum of $2,000, which deed defendant refused to receive, and which amount he refused to pay. And plaintiff now again tenders to defendant said deed. Plaintiff further says that, as the said real estate was given by defendant to him, and accepted by him, as $2,000 as a part of the purchase money for the St. Louis real estate, and as the defendant had no title to said real estate at the time

said conveyance was made, and as the plaintiff received nothing for the $2,000, he, therefore, asks that he may have judgment against defendant for said sum, and that he have a vendor's lien for same against said real estate, and for such other and further relief as may be just and right."

In this state the mere fact, that a sale of land has taken the form of an *exchange*, that is to say, that the buyer pays the purchase price in other lands, does not prevent the vendor from having a vendor's lien upon the land conveyed by him.    This is shown by the case of *Pratt v. Clark* ( 57 Mo. 189 ; s. c., on second appeal, 65 Mo. 157 ), in which the defendant conveyed to the plaintiff, in exchange for land conveyed by the plaintiff, a tract of land which was subject to an incumbrance of $1,000, agreeing to discharge the incumbrance, which he failed to do.    It was held that the plaintiff had a lien for $1,000 on the land conveyed by him to the defendant in the exchange, which would rest upon it until the removal of the incumbrance from the land conveyed to the plaintiff.

In *Bradley v. Bosley*, 1 Barb. Ch. 125, there was an exchange of land.    The land, which the defendant conveyed to the plaintiff in the exchange, was situated in the distant state of Illinois, and the plaintiff was unacquainted with it.    The defendant made false representations to the plaintiff as to its situation, quality and value, upon the face of which representations the plaintiff made the exchange.    It was held that the plaintiff had an equitable lien upon the land conveyed by him to the defendant for the amount of the difference in value between the Illinois land, as it really was, and its value, as it would have been had the defendant's representations turned out to be true, with interest on such difference ; and that a court of equity could, without remitting the plaintiff to any remedy at law, ascertain this amount in the first instance, and charge it as a lien upon the land conveyed to the defendant.    In

Florida v. Morrison.

the opinion in this case, Chancellor WALWORTH (an equity judge of great reputation) said : "The Illinois lands were a part of the consideration to be received in payment for the LeRoy farm, which was conveyed to the, defendant. And the vendor has, in all cases upon the sale of real estate, an equitable lien upon the estate sold for the unpaid purchase money, as between him and the vendee, unless there is either an express or implied agreement to waive such lien, although it is otherwise as to personal property. And where, by the fraud of the vendee, a part of the price of the lands sold in fact remains unpaid, although the vendor supposed he had been paid in full at the time, there is no waiver of the equitable lien for the part of the price that actually remains unpaid. Thus, if upon the sale ot the farm, the purchaser should pay for the half of it in good money, and for the other half in the worthless bills of a broken and insolvent bank, from which nothing could be obtained, the vendee fraudulently representing such bills to be good and collectible, the vendor would have the right to elect either to rescind the sale and have a reconveyance of the land, or to charge the land itself with the half of the purchase money which remained unpaid as an equitable lien upon such land. And a person having an equitable lien upon land for the unpaid pur- chase money may come into this court in the first instance to enforce such lien without resorting to a suit at law to recover the amount. So in the present case, although the complainant is not entitled to rescind the contract so far as relates to the Illinois lot merely, and is only entitled to the difference in value between the lot, as it actually was, and what that value would have been if the defendant's representations had been true, the price of the Le Roy farm remained unpaid, at the time of filing this bill, to the extent of that difference. The complainant, therefore, had a right to come into this court to enforce such equitable lien against the LeRoy farm, and, as an incident to that relief, this court must

ascertain the amount of such lien." *Bradley v. Bosley*, 1 Barb. Ch. 125, 152.

In *Coit v. Fougera*, 36 Barb. 195, a vendor agreed to take a conveyance of other land in payment for the land conveyed by him, and, in pursuance of the agreement, the deed in payment was made by the defendant and delivered to a third person in *escrow*, who refused to deliver it to the plaintiff. It was held that the plaintiff's lien was gone, and that his only remedy was against the person, to whom the deed had been delivered in *escrow*, for his wrongful act in refusing to deliver it, or to compel him to deliver it. The court dealt with the question of the waiver of the vendor's lien, and recognized the doctrine of the preceding case, thus: "It need not be denied that, if by the fraud of the vendee a part of the purchase money remains unpaid, when the vendor supposed it had been paid at the time, a lien may be asserted for that portion. That is the doctrine declared by Chancellor WALWORTH in *Bradley v. Bosley*, 1 Barb. Ch. 125, 152. If in the present case the defendant had fraudulently represented that he was the owner of a house and lot worth $5,100, and so induced the plaintiff to accept the conveyance of it in payment of that sum, when in reality no such property existed, or he was not its owner, or if he had fraudulently misrepresented its value, or his title, the result would have been that the purchase money would have remained unpaid *pro tanto*, by the fraud of the purchaser, and the court might have seen no reason to suppose that the ordinary lien was relinquished or waived." *Coit v. Fougera*, 36 Barb. 195, 200, opinion by EMOTT, J.

In 1859, the supreme court of Wisconsin dealt with the very question supposed by Chancellor WALWORTH, in the foregoing extract, in an opinion delivered by Justice COLE, who is still a member of that court after more than forty-two years of continuous and distinguished judicial service therein. In that case the plaintiff had parted with certain lands to the defendant,

Florida v. Morrison.

taking in part payment therefor certain securities delivered to him by the defendant, which the defendant represented to be good and collectible, but which turned out to be worthless. On a demand made by the plaintiff upon the defendant, the defendant had subsequently turned over to the plaintiff other securities, which he in like manner represented to be good, but which also turned out to be worthless. In each case, the representations of the defendant as to the goodness of the securities were not mere expressions of opinion or belief, but were fraudulent representations. The court held that the plaintiff was entitled to a vendor's lien upon the lands conveyed to him by the defendant for the amount, which would have accrued to him from the securities, had they turned out as represented by the defendant. The court, after referring to the equitable truism that a vendor's lien is founded in the moral principle, that a person who gets possession of the property ought not to keep the same without paying the full consideration, said: "If we were of the opinion that the respondent, by taking such securities, and trusting to the responsibility of other persons, thereby lost the implied lien upon the property, which the law would otherwise have given him (*Nairn v. Prowes*, 6 Ves. 762; *Cole v. Scot*, 2 Wash. 141; *Gilman v. Brown*, 1 Mason, 191), yet that certainly cannot be the case, if there was fraud in the transaction. And, according to the complaint, McAlister not only perpetrated a gross fraud, when he turned out the notes and mortgages in the first instance and represented them to be good, when he knew them to be worthless, but he made equally false and fraudulent statements as to the value of the additional securities delivered over to the attorney. McAlister knew these latter securities to be worthless when he represented them to be good, and against parties abundantly able to pay them; and if the respondent relied upon those false and fraudulent statements (and had a right to rely upon them when he received such securities),

then we cannot very well understand how McAlister and Rosier can possibly be in a better position, or the respondent in a worse one, on account of the fraud." And the court also reasons that the plaintiff could not be in a worse, nor the defendant in a better position, on account of the second fraud, than if it had not been perpetrated.

From these decisions the general principle may be extracted that, where a vendor parts with his land and receives in part payment of the same specific property of any kind, whether land, or notes, or mortgages, or any property whatsoever, upon a representation by the vendee as to its quality, character or value, and such representation forms a material inducement for the vendor entering into the contract, and turns out to be false in fact and fraudulently made, he may maintain an action in equity against the vendee to charge the land conveyed by him with a lien for the difference between the value of the property, so received by him from the vendee in payment, and its value as represented to him by the vendee.

It remains to consider whether, upon a fair interpretation of the language of this petition, it charges fraud in such a manner as to entitle the plaintiff to relief under these principles. This we understand to be the substantial point of difference between the parties. We are of the opinion that the petition does charge fraud in such a manner as to entitle the plaintiff to such relief. We take it that the fraudulent representation which will entitle a plaintiff to equitable relief, either in the form of a rescission of the contract or of the enforcement of the vendor's lien upon the property which he has parted with, need not be of that strict character which is necessary to support a common-law action for deceit. The common-law action for deceit, as is well known, rests upon a fraudulent motive, a *scienter*, an intent to cheat or deceive. But, where a party to a bargain makes to the other party a statement of a

material fact, which he either knows to be false, or which he does not know to be true, at the time when he makes it, and the other party acts upon the representation to his loss, this entitles him to equitable relief. The reason is, that it is against good conscience. for a party to keep the fruits of a bargain obtained by such means.

In this case the petition might have been more distinct in charging fraud,—at least it might have multiplied epithets. But it does charge that the defendant represented the land conveyed to the plaintiff to be of perfect title, and free from any lien or incumbrance; also that it was of good quality and of a certain value. It also charges that the plaintiff relied solely upon these statements. It also charges that they turned out to be untrue in point of fact. It also charges that " the defendant, with the purpose and intent to cheat and defraud him, falsely and fraudulently stated and represented that he had the title to said real estate examined, and that the same had been forwarded to him by mail, but, for some reason unknown, the same had not been received by him; but he assured plaintiff that title to said real estate was perfect, and that his deed to the same conveyed him a good and sufficient title thereto." It also, in its concluding portion, makes the general averment " of the great fraud and wrong perpetrated by the defendant." It seems to us that the allegations of the petition, taken together, are inconsistent with the interpretation that the defendant may have made the representation innocently, or on mistaken information, or upon a *bona fide* belief, founded upon reasonable ground, that they were true.

We, therefore, think that the petition states a case within the principle discussed, and we accordingly reverse the judgment and remand the cause. It is so ordered. All the judges concur.