## DOYLE v. HAMILTON FISH CORPORATION.

(Supreme Court, Appellate Division, First Department. April 7, 1911.)

1. LANDLORD AND TENANT (§ 83*)—RENEWAL OF LEASE—CONDITION PRECEDENT.

   Where a lease provided that, if the landlord elected to grant a renewal, it should be "at the expense of" the tenant, payment of such expense was not a condition precedent to the grant, but, on a renewal being made, only created a simple debt from the tenant to the landlord.

   [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 83.*]

2. LANDLORD AND TENANT (§ 83*)—RENEWAL OF LEASE—EXPENSES.

   Where a lease provided that a renewal thereof should be at the tenant's expense, the statutory notary's fee for taking the acknowledgment to the new lease was properly included in such expense.

   [Ed. Note.—For other cases, see. Landlord and Tenant, Dec. Dig. § 83.*]

3. LANDLORD AND TENANT (§ 201*)—RENEWAL OF LEASE—EXPENSES.

   Where a lease provided that a renewal thereof should be at the tenant's expense, and that, in case of the failure of the parties to agree on the rent for the new term, each should appoint an appraiser to value the property, the fee paid by the landlord to his appraiser was not chargeable to the tenant.

   [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 201.*]

4. LANDLORD AND TENANT (§ 200*)—LEASE—RENEWAL—RENT.

   A tenant, under a lease providing for a renewal thereof on expiration of the same, or the purchase by the landlord at his election of buildings erected by the tenant, is entitled to remain in possession until the landlord has elected whether to renew or purchase, and during such time can be required to pay, as for use and occupation, only an amount estimated at the rate of rent reserved in the original lease.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 796; Dec. Dig. § 200.*]

5. LANDLORD AND TENANT (§ 157*)—RENEWAL—ELECTION TO RENEW—REVOCATION.

   Where a lease provided that on the expiration thereof the landlord might elect to either renew the same or purchase the buildings erected by the tenant on the premises, that the landlord, after having elected to renew, refused to execute a new lease except on unreasonable conditions, did not constitute a revocation of such election, and entitle the tenant to recover the value of the buildings; the rights of the parties having become fixed by the election.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571–607; Dec. Dig. § 157.*]

Appeal from Special Term, New York County.

Action by Alexander Doyle against the Hamilton Fish Corporation. From the judgment, and from an order denying plaintiff's motion to open the case and introduce further testimony, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Merritt E. Haviland, for appellant.

John S. Montgomery, for respondent.

SCOTT, J.  Appeal from judgment for defendant.  The controversy relates to the rights of the parties, as tenant and landlord, respectively, under a lease which by its terms expired on November 1, 1907.  At its inception, this controversy involved only a small sum of money, insignificant in amount compared to the value of the property involved.  Neither party, however, was willing to give way to the other, and as a result the controversy has now attained larger proportions.  It arose over the landlord's covenant to renew the lease of the land, or to pay for the buildings erected thereon, which covenant was contained in a lease dated October 29, 1886, made between Hamilton Fish, as landlord, and Eliza A. Clark, executrix, as tenant; plaintiff being the successor in interest of said Clark, and defendant being the successor in title of said Fish.  The lease provided that the landlord, at the expiration of the term of 21 years, should have the option either to renew the lease for a further term of 21 years at such annual rent as might be agreed upon, or to pay to the tenant the value of the building erected thereon.  In the event of a failure to agree upon the rent for the new term, each party was to appoint a disinterested appraiser to value the lot, and also to separately value the building without reference to the value of the lot, and 5 per cent. upon such valuation of the lot was to be the annual rent of the lot for the new term, if the landlord elected to renew the lease.  Provision was made for the appointment of a third appraiser in case those originally appointed should fail to agree.  The landlord covenanted on his part, in default of giving such renewal, to pay to the tenant the appraised value of the building.  It was further stipulated that in case the parties failed to agree, so that it became necessary to appoint appraisers, they should be so appointed at least one month before the expiration of the term, which in this case meant October 1, 1907.  There was nothing in the lease to prevent the parties, if they saw fit, from agreeing upon the terms of a new lease or appointing appraisers any time before October 1, 1907.

The plaintiff, having sublet the premises and being anxious to know what disposition was to be made of the property, frequently requested the landlord, commencing in the autumn of 1906, to determine how it would exercise its option, and at what figure it valued the lot.  He met only with refusals until September 17, 1907, when the landlord informed him that it valued the lot, for the purposes of renewing the lease, at $20,000.  This price the plaintiff considered excessive, and in fact it exceeded by $5,000 the value afterwards agreed on by the appraisers.  The parties having thus failed to agree, the plaintiff on September 26, 1907, appointed an appraiser on his behalf, and on the following day defendant appointed an appraiser on its behalf.  A few days later plaintiff found that the appraiser whom he had appointed was not qualified to act under the terms of the lease, because he was not the owner, in fee, of real estate in the neighborhood.  Accordingly, on October 11, 1907, with defendant's acquiescence, plaintiff appointed a substituted appraiser, who was duly qualified.  On November 8, 1907, the appraisers agreed upon a sworn

written appraisement, fixing the value of the lot at $15,000 and the value of the building at $5,000. The trial court has found:

"That said appraisal was duly authorized and was duly accepted by the parties to this action as a full compliance with the terms of said lease of October 29, 1886, providing for an appraisal of said lot and buildings."

On November 13th a Mr. Hodel, whose relation to the defendant is not disclosed, but whose letter appears to have been written on the letter head of the defendant, wrote to plaintiff that:

"The directors have decided to renew your ground lease. * * * The matter has been placed in the hands of our attorney, who will communicate further with you."

At this point the controversy arose which has resulted in this action. The defendant claimed that the plaintiff must accept the new lease as of November 1, 1907, at the new and increased rent from that date, and before receiving the lease should pay the sum of $36, stated to be the expense of renewing the lease. This amount included the sum of $25 said to have been paid by defendant to the appraiser appointed by it. The plaintiff insisted that the new lease should either be dated as of November 13, 1907, the day on which the landlord notified him of its election to renew, or, if it was dated November 1st, that the rent from November 1st to 13th should be rebated. He also objected to paying the appraiser's fee.

[1] Although the defendant made several propositions looking to an adjustment of the matter of rent, it persistently adhered to its claims to be paid $36 for the expenses of renewing the lease, treating it as a condition precedent to the granting of a new lease, and when it undertook to tender a lease with a view to putting plaintiff in default, imposed as a condition of such tender that plaintiff should pay the $36. This demand was without justification and vitiated the tender. The provision of the lease was that, if the landlord elected to grant a renewal of the lease, it should be "at the expense of" the tenant. It is not provided that the payment of this expense should be a condition precedent to such a grant, and the only provision on the subject amounts to creating, if a new grant be made, a simple debt from the tenant to the landlord.

[2] Furthermore, the amount demanded was too large. It was conceded that $10 was a reasonable fee for preparing the lease, and the statutory notary's fee for taking the acknowledgment would also be properly included in such expense; for, although the election of the landlord to renew fixed the rights of the parties, the original lease evidently contemplated, as was reasonable, that the renewal should be evidenced by a properly executed lease.

[3] We can see no justification for the insistence upon imposing upon the tenant the fee paid to the landlord's appraiser. That was not, properly speaking, an expense of the renewal, but an expense incurred by the landlord in order to enable it to determine how it would exercise its option to renew the lease or to purchase the building. The defendant, therefore, never made a valid tender of a new lease, because such tender as it attempted to make was always accompanied by an unlawful condition. But in our opinion the question

whether or not a new lease was validly tendered is not controlling. The rights of the parties were fixed on November 13, 1907, when the landlord exercised its option and elected to renew the lease. The court found that on that date the defendant notified the plaintiff that it elected to renew the ground lease, and the accuracy of this finding is not challenged. From that date the mutual rights of the parties were established, each being entitled to insist that the other should execute a proper formal grant. After that date the landlord's election, which was not dependent upon acceptance or rejection by the tenant, became irrevocable, except by the mutual agreement of the parties, of which there is no evidence.

[4] As to the amount of rent between the expiration of the former lease on November 1, 1907, and the date of the landlord's election to renew, neither party seems to have been guided in his or its demands by the strict letter of the rule, which is that the tenant is entitled to remain in possession of the premises after the expiration of the lease until the landlord has performed his covenant and elected whether to renew or to purchase, and during the time that he thus holds over the tenant can be required to pay, as for use and occupation, no more than an amount estimated at the rate of rent reserved in the original lease (Van Beuren v. Wotherspoon, 164 N. Y. 368, 57 N. E. 633); and this sum is not rent under either lease, for the first lease has expired, and the renewal is not yet determined upon. But, again, this question of interest is not decisive of the present case.

[5] The plaintiff sues to recover the appraised value of the building, with interest from the date of the expiration of the former lease. This is apparently upon the theory that defendant, by refusing to execute and deliver a new lease, except upon unreasonable and unlawful conditions, revoked or failed to carry into effect its election to renew. This claim we do not consider tenable. As has already been said, the rights of the parties were fixed when defendant, on November 13, 1907, declared its election to renew the lease. The plaintiff's right, therefore, was to receive a new lease at the increased rent from that date, with an obligation to pay for use and occupation at the rate of the old lease from November 1st to November 13th, and he could have enforced his right to receive such a lease. Of course, he had the alternative right to refuse to accept a new lease at the increased rent; but in that case he would have been obliged to surrender the building. Zorkowski v. Astor, 156 N. Y. 393, 50 N. E. 983. It is evident, however, that this was not his attitude, for he expressed throughout his desire to take a new lease, objecting only to certain demands made by the landlord, in some of which objections, at least, he was well justified. The landlord, having made his election, was bound thereby.

The plaintiff's right, upon the facts as they now appear, is to receive from the landlord a renewal lease, in proper form and at the new and increased rent from November 13, 1907, paying to the landlord, if he has not already done so, such rent, with interest calculated upon each installment of rent as it fell due on the 1st days of May and November, and paying, also, for the use and occupation

from November 1st to November 13th, inclusive, for use and occupation at the rate reserved as rent by the former lease, and paying, also, the reasonable and proper expense to the defendant of preparing and executing the new lease. By the judgment appealed from the defendant has recovered for the use and occupation of the premises from November 1, 1907, at the rate of $1,200 per annum, which the court deemed to be a reasonable rental. This was upon the theory that the plaintiff had forfeited all claim to the building, as well as to a renewal of the lease, and was therefore bound to pay upon the combined value of both house and lot. What has already been said will serve to show that this judgment cannot be sustained. Our attention has been called to certain apparent inconsistencies in the findings. Some of these are unimportant, and where they are both important and irreconcilable we have given to the appellant the benefit of those most favorable to him. Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937, 127 Am. St. Rep. 862. Much stress is laid upon one finding, to the effect that the delay of the appraisers in coming to an agreement as to the value of the lot of land and the building was caused by plaintiff. This finding is wholly unimportant, because neither party claimed any default by reason of the delay, and its effect is wholly nullified by the finding that the appraisal was duly accepted by both parties as a full compliance with the terms of the former lease, and by the further finding that the plaintiff fulfilled all the requirements, covenants, and conditions of the original lease.

It follows that the judgment appealed from must be reversed, and a new trial granted, without costs in this court to either party. All concur.