THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Plaintiff, *v.* NATHAN KALVIN, Defendant.*

Supreme Court, New York County, June 26, 1928.

**Landlord and tenant — construction of lease — lease for twenty-one years provided that lessor had option at expiration of term to elect to buy building at price to be fixed by appraisers or to renew lease for new term at rent to be fixed by appraisers — appraisers were to be appointed 120 days before expiration of lease — appraisal was not complete when lease expired — lessor did not exercise option before expiration of lease — defendant lessee had right, within reasonable time after expiration of lease, to elect to have lease renewed.**

The lease under construction in this case stipulates that the term shall be twenty-one years with the right of conditional renewal. The renewal clause provides that the lessor may at the end and expiration of the term, either pay to the lessee the appraised value of the building or grant a new lease for a like term at a rental to be fixed by appraisers. The lease stipulates that appraisers shall be appointed 120 days before the expiration of the lease. The lease also provides that if the lessor elects to buy the building the lessee might occupy the building rent free until the lessor pays the appraised value. The appraisal was not completed when the lease expired, and a short time before that date the lessor notified the lessee in effect that it had the right to wait until the appraisal was complete before electing either to purchase the building or renew the lease. The defendant lessee refused to accede to that interpretation of the clause in the lease. The appraisal, under the terms of the lease, is not a condition precedent to the exercise of the lessor's election to buy the building or renew the lease, and, therefore, it was obligated to make its election prior to or on the expiration of the lease without regard to the completion of the appraisal. Therefore, the lessee had the right to reject the lessor's interpretation of the lease. The lessor having failed within the time stipulated in the lease to exercise its election in the alternative, the lessee then had the right within a reasonable time thereafter to elect for the lessor, and, therefore, its election ten days after the termination of the lease to renew the lease was binding upon the plaintiff.

ACTION for declaratory judgment as to rights of parties under a lease.

*John Godfrey Saxe* [*Frank C. Laughlin, John Godfrey Saxe* and *John H. Johnson* of counsel], for The Trustees of Columbia University of the City of New York.

---

* Affd., 225 App. Div. ——.

*Miller, Otis & Farr* [*Nathan L. Miller* of counsel], for the defendant Kalvin.

*Strasbourger & Schallek,* for Medlin Realty Co., Inc., *amicus curiæ.*

LEVY, J.  Plaintiff by this application seeks judgment on the pleadings in an action for declaratory judgment, in which the court is asked to determine that its option under a lease to defendant's predecessor is still in force and effect.  Defendant urges a counter-motion, also upon the pleadings, for a declaration that his election to demand a new lease upon the basis of the valuation to be established in a pending appraisal is effective.

The action is by the lessor, the Trustees of Columbia University in the City of New York, to declare its rights under a certain written lease, dated January 1, 1907, for twenty-one years, subject to two conditional renewals each of a like period.  The original term expired December 31, 1927.  The significant provision of the lease regarding which the controversy has arisen, is that if the tenant shall " during the whole of the said term, well and faithfully keep all and every the covenants herein contained, on her and their part and behalf, then the said parties of the first part, their successors or assigns, shall and will, at the end and expiration of the term hereby granted, either pay to the said party of the second part, her successors, administrators and assigns, the just and full value at that time, of any building built and constructed in the manner hereinbefore mentioned, and in conformity with the covenants hereinbefore contained, which may be standing upon the said demised premises at the expiration of the said term, such value to be ascertained in the manner hereinafter mentioned, or, at the option of the said parties of the first part  *  *  *  grant a new lease to the said party of the second part, her executors, administrators or assigns at her or their expense, for a further term of twenty-one years, to commence from the expiration of the term hereby granted at a reasonable yearly ground rental, payable half yearly, to be ascertained as hereinafter mentioned; such second lease to contain the like covenant, conditions and provisos as herein contained."

There follows a description of the manner in which either the value the tenant is to receive for the building, or the amount of rent to be reserved in the event of a renewal of the lease, is to be determined.  Two appraisers are to be appointed at least one hundred and twenty days before the expiration of the then current term, each party to make one nomination; and in the default of such nomination by either party for thirty days, the one nominated by the other party shall appoint an impartial person to act with

him.  If the two thus selected differ in judgment, they are to appoint a third person in keeping with the method provided for that purpose.  The final paragraph of the lease reads as follows: " And it is further mutually covenanted and agreed, by and between the parties to these presents, that if the said parties of the first part, their successors or assigns, having, before the expiration of any term, elected to pay for any such building, built and erected according to the covenants herein contained, as may then be standing on the said lot, shall neglect to pay or offer to pay for the same, according to the valuation made as above provided, then the said party of the second part, her executors, administrators or assigns, shall and may hold and continue in the possession of the said demised premises until such payment shall be made or tendered without payment of any rent."

In accordance with the provisions of the lease, the parties proceeded to designate their respective representatives.  On December 22, 1927, however, plaintiff notified defendant that since the appraisal was likely not to be completed before December 31, 1927 — the date of the expiration of the term — it interpreted the lease to mean that the defendant was to pay the current rent until the appraisal was delivered and thereafter an adjustment made of any deficiency on the basis of such appraisal.  This letter of notification also contained the following paragraph: " Of course when the appraisal is delivered, if the University exercises its option to continue the lease, the new ground rent from that date to the end of the new term will be that determined by the appraisers as such reasonable yearly ground rent, and conversely, if the University exercise its option to pay for the building, I beg to assure you on its behalf that it will promptly pay the value of the building as so determined by the appraisers."

The intended effect of this, apparently, was to reserve in plaintiff the option to elect either a renewal of the lease, or the payment of the valuation of the building, even after the expiration of the term, to continue until such time as the appraisal would actually be completed.  Defendant replied to this letter, challenging the validity of the interpretation made by plaintiff, and reserving all his rights under the lease.  No election was made by plaintiff before December 31, 1927.  Thereupon, defendant notified it on January 10, 1928, that he chose to renew for another twenty-one years upon such terms as to rent as the appraisers would determine. This action was then brought by plaintiff for what amounts to a construction of the lease.  It may be noted that it does not as yet take the position that it has elected to pay defendant the value of the structure in lieu of granting an extension of the term.

Its apparent contention is that it may still acquiesce in the election by defendant of a renewal of the term, but it. takes the ground that it is not obliged to declare its choice until the determination of the appraisal.

It is urged by plaintiff that the obligation to act " at the expiration of the term," has reference to its duty either to pay the appraised value of the building or to renew the lease; that until such appraisals are complete, it cannot be compelled to elect, because such an act would necessarily require it to proceed in the dark. There is no evidence, it asserts, that the delay in the effort of appraisal can be imputed to it; and in any event, even if it were at fault, the remedy of defendant is to bring an action to compel it to elect, and not to assume the arbitrary position that he has succeeded to its right to choose between the two alternatives provided in the lease. Defendant argues that the duty of plaintiff to elect is independent of the appraisal, and its failure to act at the expiration of the term worked a transfer of the option to him.

The lease does not, in express terms, provide that the completion of the appraisal is a condition precedent to the exercise of the lessor's election. In this respect it differs from the contract in *Zorkowski* v. *Astor* (156 N. Y. 393), where the election was to be made within thirty days after the receipt of the appraisal; and from the agreement in *Van Beuren* v. *Wotherspoon* (164 N. Y. 368), where the option was to be exercised " after both the said valuations shall have been made." Can such a condition be implied from the language of the given instrument? The provision for the appointment of appraisers one hundred and twenty days before the expiration of the lease seems to indicate an intention that the valuations should be completed at the termination of the period, so that on the last day plaintiff would be in a position to tender either payment for the structure or a renewal of the lease at a fixed rental. It might forsooth find it of advantage to elect with knowledge of the respective valuations; but such information is not a *sine qua non* of sound choice, because the sources are open to it by inquiry from experts for example, without awaiting the result of determination by the appraisers. The completed labors of the latter are not, therefore, seemingly necessary to lead plaintiff from darkness to light, but they are at most in the nature of an endeavor to arrive at a valuation in accordance with the method set by the lease, from which, if honestly made, there would be no appeal. (*Ice Service Co.* v. *Phipps Estate*, 245 N. Y. 393.) Furthermore, it is not at all unlikely that such valuations would not deviate materially from the informal appraisals which were thus available to plaintiff for intelligent election.

In *Kaufmann* v. *Liggett* (209 Penn. St. 87) we find an indication of a severance of the act of election from that of appraisal. There it was sought by the lessor to invalidate an election under an option by the lessee to renew, because the appraisal had not been completed and because, until the rent had been fixed, no contract could be said to arise. The court, however, ruled (at p. 95) that: " If the right to renewal had been intended to depend upon the rent being fixed in advance, it would not only have been the easiest but most natural thing to have said so." And (at p. 96) it referred to the real subject-matter of the contract as " being a right to the renewal of the leases, * * * fixing of the rent being only secondary, the terms as to rental being in substance and effect that the rent shall be a fair one fixed by an impartial tribunal *. * *.*"

Therefore, even though the contemplated appraisal was not complete at the expiration of the term so as to enable plaintiff to pay a definite sum or tender a complete lease, it nevertheless could have elected either alternative at that time. That it realized the difficulty created by the situation is manifested by its offer to receive the existing rent until the appraisal was determined, with a suggestion of adjustment on the basis of the rate to be fixed by the appraisers, and a suspension of the right of election until that time. This proposal, as it occurs to me, was properly rejected by defendant, for under the rule of *Holsman* v. *Abrams* (2 Duer, 435), in the absence of any provision in the lease to the contrary, he was at all events entitled to continue at the current rental absolutely, if and until the lessor, in case the lease was not renewed, failed to pay or tender the value of the building. But the lease contained a provision even more favorable to defendant, granting him the privilege, if plaintiff elected to pay for the building, to remain without rent from the time of the appraisal to the time of payment. Obviously, it is this clause which lends the strongest support to the position of defendant that the right of election was to be exercised by the lessor, at or before the expiration of the lease. As already indicated, it provides that if the trustees " *having, before the expiration of any term, elected to pay for any such building* * * * shall neglect to pay or offer to pay for the same, according to the valuation made as above provided," the lessee shall be permitted to continue in possession without payment of rent until such payment or tender.

This clause must be fairly construed in order to effectuate the intention of the parties. The construction most favorable to defendant is that the election to pay for the building must be exercised at or before the expiration of the term; and that the

failure to indicate such election at that time bars the lessor from making that particular choice subsequently. What effect such an omission may have upon defendant's rights we shall consider later. But it may be well to point out that if the interpretation favorable to defendant is adopted, it would be not alone because of the well-known principle of construing a contract most strongly against him who drew it, but because it would be the only construction that did not lead to an inequitable and perhaps absurd result. Interpreted favorably to the lessor, as implying only a condition under which the lessee could obtain the benefit of possession free of rent, it would certainly lead to this absurdity: If the lessor made the election after the expiration of the term and failed to pay, the lessee would nevertheless be bound to pay the rent (*Holsman* v. *Abrams, supra*), until he was compensated for the improvements; although if the choice were expressed before such expiration, he would be entitled to occupy the premises rent free, until payment. This construction could not have been in the minds of the parties. Indeed, it would be a great temptation to a lessor of less scruple in such circumstances to delay the appraisal until after expiration, so as to postpone the time of election, and thus secure unto himself the benefit of rent payments without the immediate necessity of reimbursing the lessee for the improvements.

But there is another feature bearing upon the lessee's view of the situation, which is a necessary consequence of the law dealing with the effect of a lessor's election, upon the lessee's rights in the given circumstances. Paraphrasing the language in *Zorkowski* v. *Astor* (*supra*, 397) the lessor was bound to elect to purchase the building or renew the lease, but after it had made its election, the lessee was not bound to accept the offer in either form, because he had not agreed to do so. If it elected to purchase, self-interest would, doubtless, induce him to accept the money. But if it chose to renew the lease, he might prefer to decline it, as the rent might be so high that he would rather lose the building than undertake to pay what he might regard as excessive rent for a long period. This right of rejection by the lessee follows from the absence of any covenant binding him to accept a renewal.

It may be appropriate to consider now the effect of plaintiff's contention that it was not obliged to elect at or prior to the expiration of the term, and even if it was, defendant's sole remedy was to institute an action to compel an election. Let us assume the lessee's inclination to be in the direction of obtaining payment for the building. If he were forced to bring an action to compel an election by the lessor, he would be inviting what must be recognized as his self-destruction; for if as a result of such action it determined upon

a renewal, the lessee would be bound to accept what might be considered an undesirable lease or forfeit his right to the value of the improvements. As is suggested in *Doyle* v. *Hamilton Fish Corporation* (144 App. Div. 131, 136), in reference to the lessee's position, after the exercise of election by the lessor: " Of course he had the alternative right to refuse to accept a new lease at the increased rent, but in that case he would have been obliged to surrender the building."

The lessor's wrong in failing to elect would result in placing the lessee in a situation where he would have nothing to gain by the suggested action in equity. Quite to the contrary, he would run the positive risk of substantial loss. An effort to redress a just grievance should not have that vain and injurious effect. There might be some reason in the contention — which the lessor does not, however, urge — that its failure to elect to pay for the improvements should give the lessee the privilege to demand such payment instead of the right to compel a hazardous election. But the lessee goes further and argues, as already pointed out, that the omission of the lessor to exercise its option caused a transfer of the right of election to him. He bases this evidently upon the well-established principle in *McNitt* v. *Clark* (7 Johns. 465) which is authority for the proposition that where the party who has alternative options has failed to exercise a choice within the time prescribed, he becomes divested of the right, and the other party may elect for himself. In *Storm* v. *Rosenthal* (156 App. Div. 544) the rule is thus stated, quoting Bishop on Contracts (2d ed. 613): " We have seen that, under a contract in the alternative, the party who by its interpreted terms is to take the step at which the choice of ways presents itself, necessarily and of law elects by which one the fulfillment shall be. One of the consequences whereof is that if such party neglects to elect fulfilling, the right to choice passes thereupon to the other party, who may sue for the breach of the alternative he prefers."

On January 10, 1928, which must be said to be a reasonable time after the lessor failed to manifest its intention, the lessee sent notice of an election to renew. Did the rule in *McNitt* v. *Clark* (*supra*) give him that right? Neither that case, nor *Storm* v. *Rosenthal,* nor any adjudication in this jurisdiction supplies a state of facts of the type found present here. But *Coles* v. *Peck* (96 Ind. 333) involves a decidedly similar situation. There the lessor had three options — to renew the lease for another period upon the same terms, to purchase the improvements, or to demand that the lessees pay the ground value; the price of the building or the land, as the case might be, to be determined upon appraisal. The

lease expired March 10, 1883, and the election was to be exercised one year before that date. In the event the lease was not renewed, the appraisal was to proceed. The lessor failed to exercise her option, and the lessees notified her of their election to purchase the ground. She refused to recognize this course of action and brought suit for the rent due in advance, treating the lessees as continuing tenants. The fundamental question, as the court stated it, was: " Did the failure of the appellee to avail herself of the option reserved to her in the lease transfer to the appellants the right to exercise a similar option on their part? " It then proceeds to discuss the question, quoting from the text writers as follows: " Viner, in his General Abridgment, in volume 9, on page 362, says: ' If a man sells trees growing upon his land, excepting six oaks, the exceptor is to have the election, and if there be a time limited, he must do it during such time, but if he slip the time, then the other shall elect.' Story on Contracts, at section 816, in treating of alternative contracts, concludes: ' But if the person, by his own wrong or default, lose his election,— as if he be bound, in the alternative, to do one of two things by a certain day, and he suffer the day to pass, without making an election by performing one or the other, the other party may elect which he will demand.' Bouvier, in his Institutes, volume 1, section 693, holds a similar doctrine, saying: ' The right to choose which of two things is to be delivered to fulfil an alternative obligation, called the *right of election*, is vested in the party to whom it is given by the agreement; but when there is no one selected to exercise this right, it belongs to the first agent, or he who is to do *the first act*, and on his failure to exercise it in proper time, the right passes to the other party.'

" From illustrations given and various exceptions noted, the doctrine of these extracts is only applicable to alternative obligations which are distinctly disjunctive, and not to cases in which the law, or the evident intention of the parties, implies an election."

The conclusion is reached (at p. 338) that the doctrine " may, as we believe, be safely applied to the alternative reservations contained in the case before is. *Consequently, when the appellee failed to exercise her right of election, under the lease, her right in that respect passed over to the appellants.*" (Italics mine.)

Finally, the failure of plaintiff to exercise its election to purchase the building, as provided in the lease, might at first glance seem an implied election to renew the term. But in view of the fact that the defendant was not bound to accept a renewal, one may not indulge in such an implication. The omission to elect did not destroy the disjunctive character of the alternative obligations of the lessor, and, therefore, upon its failure to make a choice the right passed

to the lessee.   Had he then chosen, he could have elected to receive the value of improvements when determined.   Instead, he chose to demand a renewal, and, as we have seen, he was well within his rights.

There is nothing in the case of *Trustees of Brooklyn Benevolent Society* v. *Connell* (179 App. Div. 821) which compels a different conclusion, and it is clearly distinguishable.   There, too, a lessor failed to make an election, and sought at the expiration of the term to recover possession of the premises on the ground of the violation of a covenant restricting the use to which the premises could be put.   The lessee counterclaimed for the value of the building.   The court held that the lessor had no cause of action, because the alleged violation occurred after the expiration of the term and while the lessee was retaining possession awaiting an election by the former. It also ruled that the counterclaim was properly dismissed on the apparent ground that the lessee was only entitled to judgment requiring the lessee to make its election.   An analysis of the situation there indicates that by failing to make an election after the lessor's omission to do so, the lessee recognized that the right of the former in that direction had not yet lapsed; and his attempt to avail himself of it by means of a counterclaim for the value of the improvements was, therefore, improper.

The motion of the plaintiff is denied and that of the defendant granted.   Settle order.