THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, Plaintiff, *v.* NATHAN KALVIN, Defendant.*

Supreme Court, New York County, October 16, 1928.

*John Godfrey Saxe* [*Frank C. Laughlin* of counsel], for the plaintiff.
*Lloyd Scott* [*Joseph F. Crater* of counsel], for the defendant.

* Affd., 226 App. Div. 775.   See 132 Misc. 601; affd., 225 App. Div. 653, 654; but revd. 250 N. Y. 468.

VALENTE, J. Plaintiff has instituted two actions for specific performance to compel the defendant to surrender the premises located at 24 and 26 West Forty-ninth street, New York, the lease of which expired on June 30, 1928. The complaint also seeks a declaration of the rights of the plaintiff in the premises. The present motions are made by defendant for judgment on the pleadings. The causes of action are founded on twenty-one-year leases made between the plaintiff and the defendant's predecessor on July 1, 1907. They provide, in identical language, among other things, that at the end of the term the owner will either pay the just and full value at that time of any building erected upon these premises, or at the option of the landlord, a new lease would be granted to the tenant for a further term of twenty-one years, containing the same covenants and provisions as the original lease. Both the value of the building and the amount of rent to be reserved in the new lease were to be determined by appraisers selected by the respective parties at least 120 days before the expiration of the term, and if these appraisers differed in judgment, a third appraiser was to be selected in the manner provided in the lease. At the conclusion of the instruments it is provided as follows: " And it is further mutually covenanted and agreed, by and between the parties to these presents, that if the said parties of the first part, their successors or assigns, having, before the expiration of any term, elected to pay for any such building, built and erected according to the covenants herein contained, as may then be standing on the said lot, shall neglect to pay or offer to pay for the same, according to the valuation made as above provided, then the said party of the second part, her executors, administrators or assigns, shall and may hold and continue in the possession of the said demised premises until such payment shall be made or tendered without payment of any rent."

This provision I shall hereafter refer to as the free rent clause.

Shortly before the expiration of the leases, plaintiff gave notice that it elected to pay for the building. The two appraisers were duly selected in accordance with the lease and have proceeded with their valuations, but have not yet arrived at any conclusion. It may be assumed that neither party has been at fault in proceeding with the determination of value. Plaintiff now seeks to compel the defendant to vacate the premises, offering to assure him by means of an undertaking that it will comply with the covenant to pay the full value of the building as soon as it is determined by the appraisers. Defendant refuses to vacate until the appraisal is completed and relies upon the last clause of the leases as authority for continuing in possession notwithstanding

the expiration of the term. The question is solely one of law raised by the pleadings as to whether, under the leases, defendant is required to surrender the premises before he has been paid the value of the buildings; and whether equity should intervene to compel him to surrender upon guaranties as to payment of the appraised value when such appraisal is completed.

The leases in question, upon the interpretation of which the solution of the problem before us hinges, are typical of a large number of other leases between the plaintiff and various other defendants. A question as to the construction of one phase recently arose between the same parties in *Trustees of Columbia University* v. *Kalvin* (132 Misc. 601). There the question was whether the landlord was compelled to elect at or prior to the expiration of the term, or whether its election was to be deferred until the completion of the appraisals. It was held that the election must be made at or before the expiration of the term, and if not so made, the right of election is transferred to the tenant. This question does not enter here because the landlord has chosen to pay the just and true value of the buildings.

In order to arrive at the intent of the parties, we must consider the language in the light of the circumstances which existed at the time the leases were made. Was it the intention of the parties to make payment for the buildings a condition precedent to the surrender of the premises?

When the parties inserted the appraisal clause providing for the commencement of appraisal proceedings at least 120 days before the expiration of the leases, they undoubtedly contemplated that the valuations would be completed at or before the expiration of the term. If upon such completion the landlord failed or neglected to pay the amount determined as the value of the buildings, the tenant was permitted to continue to occupy the premises free of rent until the amount was paid. This is a strong indication that payment of the amount appraised was a condition precedent to the surrender of the premises. But the particular contingency which has happened here — the failure of the appraisers to complete their work before the end of the term — does not seem to have been foreseen by the parties to the agreement at the time the leases were executed; and the question arises whether under the circumstances — there having been no willful neglect, and the arbitration having proceeded in due course — the tenant will be obliged to surrender the premises upon such terms as will secure him payment upon the completion of the appraisal. This brings us back to the question whether the requirement to surrender at the expiration of the term is absolute or conditioned upon payment.

It may be well to consider first the general nature of the right of the tenant in and to a building under a covenant of payment at the expiration of the lease. In *Holsman* v. *Abrams* (2 Duer, 435, 448) it is rather broadly stated that: " The dwelling house, in the case before us, since the expiration of the lease, has been, and still is not the property of the plaintiffs, but of the defendant. In a qualified, but still in a legal sense, by force of the covenants in the original lease, she is its owner, and it is only by granting her a new lease, or by paying her its value, that the plaintiffs can divest her title."

From this utterance the inference might be drawn that the tenant in the instant case is still the owner of the buildings and cannot be compelled to surrender until paid. But such a conclusion is hardly consistent with the result in *Matter of Coatsworth* (160 N. Y. 114), where the tenant was obliged to quit at the expiration of the term and prior to payment, although in a subsequent action against the landlord he was reimbursed for the value of the improvements. (*Schoellkopf* v. *Coatsworth,* 166 N. Y. 77.) Whatever validity there may be in the dictum in *Holsman* v. *Abrams,* it can only apply to the situation prior to election. After the landlord's election to pay for the building and upon expiration of the lease, the tenant became a vendor, with a lien upon the premises — according to the better doctrine — for the value of his improvements. (*Douglaston Realty Co.* v. *Hess,* 124 App. Div. 508.) Whether he was bound to surrender prior to actual payment and merely relegated to his vendor's lien as security, depends upon the language of the lease in each particular case.

In *Matter of Coatsworth* (*supra*) the court decided that payment was not a condition precedent to surrender, holding as follows: " The covenant on the part of the landlords is that at the expiration of the term they will pay for the value of the buildings that may *then* be standing upon the premises. It will be observed that the lease is silent as to the time when payment shall be made and that there is no provision requiring payment before delivery of the possession of the premises. In the absence of such provisions the law would doubtless require payment to be made as soon as the amount was ascertained and determined. This amount could not well be ascertained before the termination of the lease; for the condition of the buildings then standing upon the premises could not well be determined before the arrival of that event. The lease provides for the determination of their value at that time by three disinterested persons who are to be chosen in accordance with the provisions of the lease. This, manifestly, contemplates

an appraisement after the termination of the lease, and after it has become possible to determine the condition of the buildings to be appraised. It, consequently, appears to us that payment was not required by the terms of the lease as a condition precedent to the surrender of possession, but that the covenant was to pay after the value of the improvements had been ascertained by appraisal under the provisions of the lease."

It must be noted, however, that in that lease the landlord had the privilege to notify the tenant of his election to take possession at the expiration of the lease, but no time was specified as to when the appraised value was to be paid. The election was exercised, and summary proceedings begun, in which the tenant took the position that payment was a condition precedent. The notice of election to take possession evidently implied the covenant on the part of the tenant to surrender, and the court, therefore, allowed the landlord to recover possession prior to payment.

But in the instant case there was no covenant to surrender; on the contrary there was an implication that the tenant would have the right to continue possession without payment of rent until he was reimbursed. Plaintiff contends that this provision is a penalty, which under the situation that has arisen, should not be enforced, because there has been no default in proceeding with the appraisal. Under these circumstances, it is urged, it would be unconscionable for the tenant to be permitted to continue in possession without paying rent. The equitable solution of the problem in this situation seems to me in accord with what is said in *Van Beuren* v. *Wotherspoon* (164 N. Y. 368): " Where a lease for a term of years contains a covenant on the part of the lessor that at the expiration of the term the lessee shall be paid the appraised value of the building, or a new lease at an appraised rent shall be granted, the lessee at the expiration of the term is entitled to retain the possession until the covenant shall be performed by the lessor. This binds both the lessor and lessee. The lessee is not, however, discharged from the payment of the rent, but in an action for use and occupation the lessor can recover no more than the rent originally reserved. (*Holsman* v. *Abrams*, 2 Duer, 435; *Ryder* v. *Jenny*, 2 Robertson, 56; *Paine* v. *Rector*, etc., 7 Hun, 91; *Van Rensselaer* v. *Penniman*, 6 Wend. 569.) "

The lease in that case, however, was somewhat different from those under consideration, in providing that the appraisal was not to begin until after the expiration of the term; from which it followed that the lessee could continue in possession until an election had been made, at the rent originally reserved. Accordingly, it might be argued that as the election to pay was made

by the present landlord prior to the expiration of the leases, it became the tenant's duty to surrender at the end of the term, in accordance with the rule in *Doyle* v. *Hamilton Fish Corporation* (144 App. Div. 131). There it was held under a similar landlord's option clause that the tenant was entitled to remain in possession of the premises after the expiration of the term, until the landlord had performed his covenant and elected whether to renew or to purchase. In the absence of the free rent clause in the present instruments, it would possibly follow that upon election by the landlord the tenant would be required to surrender possession at the expiration of the term, merely retaining the lien upon the premises for the value of the buildings. Looking at the situation as if the leases were made today, with an eye to the large increase of land values, such a lien would be adequate security. But considering it in the light of the circumstances at the time the provisions of the instruments were framed, no such inference can be drawn. A surrender of the buildings in the minds of the tenant at the time would have meant the giving up of a valuable security, with the opportunity open to the landlord to destroy, and with only inadequate protection to the tenant in the event of non-payment for the building. And the provision which permitted the tenant to retain free possession until such payment was intended both as a coercive measure to insure prompt payment and also to enable the tenant effectively to protect his lien until he was paid.

It may be urged that an interpretation which permits the tenant to remain in possession until the appraisal is completed is apt to tempt him to delay the completion of the task so as to secure the benefit of free or low rent. If such a circumstance existed and the tenant were dilatory in that respect, undoubtedly he would be compelled to pay for use and occupation during the intermediate period on the basis of present rental value and not according to the old rent reserved. But the papers indicate that there has been no such default either on the part of the landlord or the tenant. Therefore, the equitable view in the absence of other circumstances, is to construe the free rent clause as according the tenant the right to continue in possession until the appraisers have determined the valuation, at the old rental, and thereafter free of rent if the landlord has failed or neglected to pay the amount fixed. It may be noted that if the tenant should be compelled to surrender the premises during the interval, he would no longer be in a position to enforce his right to prompt payment as provided in the free rent provision of the lease.

But a new element has been introduced in the case by the landlord's demand that the tenant be compelled to surrender

upon furnishing an undertaking to the tenant that it will pay the amount of the award with interest. The difficulty with this plan is that the taking of security in the form of an undertaking may deprive the tenant of his lien upon the premises.

In *Coit* v. *Fougera* (36 Barb. 195, 198) it was said: "The lien of a vendor upon the estate conveyed, for the purchase money of that estate until it is paid, rests upon the doctrine that it is inequitable that the purchaser should have the land, and yet refuse to pay the consideration. * * * But it is subject to this marked qualification, that whenever the vendor has manifested an intention not to rely upon his lien on the lands sold, for the purchase money, he is considered to have waived his lien. Farther, it is well settled that whenever any distinct or independent security is taken, as by a mortgage of other land, or the responsibility of a third person, the lien is considered as waived. Such a distinct and independent security, in the language of an eminent writer, is evidence that he did not trust to the estate as a pledge for his money. (Sugd. Vend. p. 861.) Notwithstanding the doubts of Lord ELDON on this point, in the noted case of *Mackreth* v. *Symmons* (15 Ves. 349), this doctrine is now settled, both in England and in this country. (See *Fish* v. *Howland*, 1 Paige, 20, 30.) "

And in *Hazeltine* v. *Moore* (21 Hun, 355, 356) the court said: "A lien for the purchase money is waived where a note is taken by the vendor in which a third person joins as security. *A fortiori* where the obligation taken is the obligation of a third person and not of the vendee." (See, also, *Maroney* v. *Boyle*, 141 N. Y. 462; *Flickinger* v. *Glass*, 222 id. 404.)

Hence, if the tenant should be compelled to accept an undertaking, the court would be rewriting the contracts which the parties made and deprive the tenant of the effective instrument for enforcing prompt payment which is provided in the leases themselves. Thus, notwithstanding any possible dilatoriness on the part of the landlord in completing the appraisal, the tenant would be compelled to wait indefinitely for payment. While assured in some measure by the provision for interest, such assurance might be much less satisfactory than the enforcement of prompt payment under the free rent clause and the right to continue at the former rental until the completion of the appraisal. Under these circumstances, equity should not intervene to modify contracts which the parties themselves have freely made. The plaintiff is not entitled under its pleadings to compel the tenant to surrender the premises.

While a declaratory judgment is also sought, the reasons which compel a denial of specific performance are based upon the con-

struction of the rights of the parties here, and consequently no separate declaration of rights is necessary. No declaration is asked as to the measure of the liability of the tenant for rent during the period of the pending appraisal, but I have indicated my views that until such time as the appraisal is completed and in the absence of any dilatoriness on his part the tenant is compelled to pay rent at the rate reserved in the leases, and after its completion and the failure of the landlord to pay, the tenant is privileged to occupy the premises free of rent.

The motion is, therefore, granted. Settle order.